**STATE of Missouri, Respondent,**

**v.**

**Raymond BOOTHE, Appellant.**

**Nos. 56875, 56876.**

Supreme Court of Missouri,
En Banc.

Sept. 11, 1972.

Rehearing Denied Oct. 9, 1972.

**12**

———◆———

John C. Danforth, Atty. Gen., Michael L. Boicourt, Asst. Atty Gen., Jefferson City, for respondent.

Willard B. Bunch and Philip H. Schwarz, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; and Paul T. Miller, Executive Director, Kansas City, of counsel.

MORGAN, Judge.

Defendant, Raymond Boothe, was charged in separate indictments with having participated in the killing of James William Lindsay and James Richard Lindsay. On motion of the defendant, the two cases were consolidated for trial; and, the jury returned a verdict of guilty and assessed the death penalty on each charge. Defendant has appealed.

Based on the state's evidence, a jury reasonably could have found: that during the evening of January 8, 1970, James Richard Lindsay and his wife, Jackie, were in the bedroom of their mobile home watching television; that a man entered a door of their trailer which was not commonly used, and that Richard proceeded down the hallway toward the intruder; that a struggle ensued; that two other men entered through the front door and assisted the first intruder in the attack on Richard; that Jackie saw one of the men standing over Richard with a hand gun pointed downward at him; that she ran to the home of Richard's father which was located on the same property and advised him of the trouble; that the father, William, told his younger son to get the shotgun and then proceeded toward the trailer; that the younger son arrived later and saw three men leaving, and he shot three times in their direction; that the son, Richard, and the father, William, were found at the scene mortally wounded by gunshot wounds; that Reuben Parker, a neighbor,

had heard the shots and observed three men leaving by way of his driveway; that Andrew Hansen, his wife and son lived across the street from the Lindsay's residence; that soon after the shooting, Mrs. Hansen heard a "banging" on her back door and heard voices saying "Let us in, let us in"; that two strangers came in when she opened the door; that one of the men, later identified as the defendant, said, "We have been in a bad accident. My friend's hurt. We have to get him to a hospital."; that she awakened her husband and he dressed in order to take the men in his car; that defendant said, "Hurry, please hurry; hurry, please hurry."; that his mouth was bleeding as though his teeth had been "bashed in"; that the hands of the other man were bleeding badly; that Mr. Hansen left with the men toward his garage at which time he saw two police cars across the street at Lindsays; that he suggested to the two men that, "They can get you there quicker than I can."; that defendant stuck a gun into his ribs and said, "You get us out of here or I'll kill you."; that Mr. Hansen drove several blocks before he was told to stop; and, that after being told to get out the two drove off with his car.

One of defendant's accomplices was identified as one Charles Stoyan Cuckovich, whose convictions and sentences for the same murders were considered in State v. Cuckovich, Mo., 485 S.W.2d 16, handed down this date.

▪ First, it is contended that the trial court erred by overruling defendant's motion to suppress his identification by the three Hansens, because the identification procedure followed was "unnecessarily suggestive and conducive to irreparable mistaken identification . . . ." The record reflects that on several occasions the police showed the Hansens different groups of photographs. Prior to making a positive identification of both defendant and Cuckovich, they had picked out different photos of other persons who appeared somewhat similar. At a later date, the

Hansens observed defendant and Cuckovich in a lineup with four other men. They were seated in different areas without contact between them and each made a positive identification of defendant and Cuckovich. There is nothing in the record to indicate any police action whatever which could have been suggestive in any degree. The police report of the lineup gives a detailed description of each of the six men presented and they had many common characteristics and similarities. Gaitan v. State, Mo., 464 S.W.2d 33, 35. It must be conceded that the Hansens had an opportunity to observe the individuals concerned in their own home for several minutes. Necessarily, each case must be considered on its own facts and evaluated in light of the totality of the surrounding circumstances. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. "The rationale of such an approach necessarily demands consideration be given to (1) the presence of an independent basis of identification, (2) the absence of any suggestive influence by others, and (3) positive courtroom identification." State v. Parker, Mo., 458 S.W.2d 241, 244. The facts of this case show such criteria were met and satisfied, and that the dictates of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, were not violated.

▪ Second, objection is made to the sustaining of the state's challenges for cause of two veniremen. Each said that they had attended school with defendant. When asked if they would be embarrassed to find the defendant guilty, one replied "possibly" and the other replied "I would." Further interrogation made it quite evident that neither could approach his duties as a juror with a free and open mind, and we believe the trial judge ruled properly. Even absent such a conclusion, it is well established that the trial court has a wide discretion in determining the qualifications of jurors and that its decisions thereon will not be disturbed unless such discretion was clearly abused. State v. Hart, Mo., 411 S.W.2d 143; State v. Harris, Mo., 425 S.W.

**14**

2d 148. There is no merit in this contention.

■ Third, it is contended that state's exhibits No. 15 through No. 17 should not have been admitted in evidence. Such items were found by one of the investigating officers at the scene. He testified that he found a man's felt hat caught under the trailer door; that just east of the trailer steps he found a pair of men's glasses; that on the fence (toward the Parker residence) he found a piece of black cloth material which appeared to have come from a topcoat and a material that looked like the lining of a pants' pocket; that he found certain coins and new automobile ignition points in the same area. Defendant contends that none of the listed items were relevant and that he was prejudiced by their admission. The record shows that Jackie testified that the first man entering the trailer was wearing a dark hat, but that he had no hat and only a woman's silk stocking over his head when at Hansens. As to the glasses, the same is true. The man later identified as defendant had on glasses at Lindsays but not at Hansens. Mrs. Hansen testified that the topcoat of Cuckovich had a torn pocket. We do not know of any reason why such items were not relevant and admissible. All of them tended to directly connect the men at Hansens with the scene of the murders at Lindsays. " . . . [D]emonstrative evidence such as articles which tend to establish the crime charged, or connect the accused with the offense, or explain the intention of accused, or give the jury a more accurate impression of the facts or throw any relevant light upon any material matter are admissible in evidence." State v. Evans, Mo., 237 S.W.2d 149, 151 [1, 2]. The items listed clearly met such a test. In any event, they were so innocuous that one could not conceive of such items having inflamed the jury to the prejudice of defendant.

Fourth, alleged error is premised on the admission in evidence of the .38 caliber revolver seized at the time of the arrest of Cuckovich. The latter presented the identical point in his appeal, and the ruling therein is controlling here. In Cuckovich, supra, we held:

"This weapon was not identified as the one used in killing the Lindsays and defendant says that it had no probative value and served only to arouse passion and prejudice on the part of the jury. The gun in question was clearly connected with the defendant and was of the same caliber as the one used in the killings. Expert testimony indicated that the bullets taken. from the bodies, and test bullets fired from this gun, had the same general characteristics; that they had some points of individual characteristics but that the murder bullets could not be positively stated to have been fired from the gun in evidence because its barrel had been mutilated by some type of sharp instrument.

"We have concluded that since the gun was in the possession of defendant at the time of his arrest and was shown to be similar to the murder weapon, it was properly admitted in evidence. '[A] weapon or instrument found in the possession of accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from the circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred * * *.' 22A C.J.S. Criminal Law § 712, p. 966. See also State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330." We have considered State v. Richards, 334 Mo. 485, 67 S.W.2d 58; State v. Wynne, 353 Mo. 276, 182 S.W.2d 294; State v. Merritt, Mo., 460 S.W.2d 591; and, State v. Underwood, Mo., 470 S.W.2d 485, cited by defendant, and find all to be factually distinguishable and not controlling.

■ Fifth, argument is made that the state improperly placed defendant's charac-

ter and reputation in issue. Two instances have been preserved for review. (1) During the examination of an officer the following transpired:

"Q. Now, eventually you participated in the apprehension and arrest of this defendant, and Charles Cuckovich, did you not?

A. I participated in the arrest of Charles Cuckovich. Mr. Boothe was already in jail.

Q. He was already in custody?

A. That's correct."

The defendant asked for a mistrial only. From the record, there is nothing to indicate a predesigned plan by the state to prejudice the defendant by showing his jail confinement for another offense. In fact, the incident in question could not have raised such a thought in the minds of the jurors. The testimony was being given as an explanation of the lineup in which both Cuckovich and defendant were participants, and the only inference could have been that another officer had taken defendant into custody prior to the time the officer witness had assisted in apprehending the accomplice, Cuckovich. (2) An effort was made by the defense to show that defendant had a leg injury which, presumably, would have prevented him from running from the Lindsays up the Parker driveway to the Hansens. To counteract such an effort, the state offered evidence that others had observed defendant walking without a cane and that he was fully mobile. One officer while relating such observations commented: "I kept him just a little bit ahead of me." Again, there was no suggestion defendant was at the time under arrest for a different offense, nor, in fact, that he was under arrest at all. It would take a very strained approach to conclude such testimony made the jury aware of defendant's character or his reputation. Additionally, the trial judge is in a better position to determine the prejudicial effect, if any, in this connection, and we can not rule as a matter of law that its discretion was abused in refusing to declare a mistrial. State v. James, Mo., 347 S.W.2d 211; State v. Smith, Mo., 431 S.W.2d 74.

Sixth, contention is made that the evidence was insufficient to support a conviction for first degree murder, and that an instruction on murder in the second degree should have been given. This same point was considered in reference to the identical facts presented here in Cuckovich, supra, and denied. Therein, the rules of law applicable to the facts shown were fully reviewed, and there could be no advantage in repeating the same again. Suffice it to say, that as in Cuckovich, "we rule that the evidence supported first degree murder submissions and that the court properly refused to give the instructions submitting second degree murder."

 Lastly, we need not consider defendant's arguments relating to the selection of the jury for consideration of the death penalty, nor his contention that the death penalty is constitutionally prohibited as being cruel and unusual. Under the present state of the law, the death penalty in this case can not stand. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (decided June 29, 1972). The sole and only punishment for first degree murder in this state is now life imprisonment. Section 559.030, V.A.M.S. The punishment assessed being unauthorized, we, necessarily, reduce the same to one of imprisonment for life and do so by virtue of Section 547.280, V.A.M.S. and Supreme Court Rule 28.15, V.A.M.R.

It is further ordered that the clerk of this court forthwith furnish the warden of the state penitentiary and the state Department of Corrections a certified copy of this order and judgment.

As so modified, the judgment is affirmed.

All concur.