Albert William **SCHLEICHER**,
Appellant,

v.

Donald W. **WYRICK**, Warden, Missouri State Penitentiary, Appellee.

No. 74–1855.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1975.

Decided Feb. 4, 1976.

Rehearing Denied Feb. 25, 1976.

Peter H. Ruger, St. Louis, Mo., for appellant.

Preston Dean, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

This is a habeas corpus action. Appellant was convicted in November, 1967, of burglary and of stealing. The convictions were affirmed in June, 1969, by the Missouri Supreme Court. *State v. Schleicher*, 442 S.W.2d 19 (Mo.1969). Appellant requested, and was denied, Rule 27.26 relief under Missouri procedure. *Schleicher v. State*, 483 S.W.2d 393 (Mo.1972).

Thereafter this action was filed. The petition was referred to a U.S. Magistrate. The Magistrate filed a nine-page review recommending that the petition be dismissed without an evidentiary hearing. The District Judge thereafter dismissed the petition without holding an evidentiary hearing. This appeal followed.

The issues presented here are:

1) Whether the district court improperly relied on the Magistrate's review and recommendation concerning the appellant's petition.

2) Whether the district court erred in dismissing the appellant's petition without an evidentiary hearing.

3) Whether fingerprints of appellant received in evidence, and used by the expert for comparison with prints lifted at the scene of the burglary for which appellant was convicted, were the product of an illegal arrest.

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

While appellant claims the facts are in dispute and that an evidentiary hearing should have been held, it is to be noted that a Magistrate, a U.S. District Judge, and the Missouri Supreme Court have each made factual findings and held against appellant.

The Missouri Supreme Court stated the material facts as follows:

On November 16, 1966, a burglary occurred at the residence of Joseph Stelman in St. Louis. The police lifted fingerprints from a plastic tray and they were placed in the latent fingerprint file. There is a conflict in the evidence concerning the exact time of defendant's arrest. However, there is evidence to support the trial court's finding that he was arrested on February 3, 1967, upon suspicion that he had burglarized Jack's Lounge in St. Louis. On February 4, 1967, he was again arrested (while still in custody) upon a fugitive warrant for a burglary in St. Louis County. He was processed and fingerprinted. Later that day it was discovered that defendant's prints matched those found at the Stelman home and he was charged with that burglary. At the trial the fingerprint evidence was the only evidence which connected defendant with the offense. [*Schleicher v. State*, 483 S.W.2d 393, 394 (Mo.1972).]

While an evidentiary hearing was not held, the transcript of the evidence introduced at the original trial and the transcript of the evidence taken at the 27.26 hearing were before the District Judge and have been read by this court. Certain facts deserve emphasis as supporting our conclusion that a further evidentiary hearing was unnecessary.

Appellant was represented at his original trial by counsel of his own choosing. His trial counsel was experienced. The latent fingerprints lifted at the Stelman residence and the fingerprints taken at the police station were not objected to by counsel. Originally counsel objected to Exhibits 1 and 2, the latent fingerprints. No objection was ever made to Exhibits 3 and 4. Finally counsel withdrew his objection to Exhibits 1 and 2.

MR. DONNELLY: One moment if you please. At this time I would call for the admission of State's Exhibit No. 1, State's Exhibit No. 2, State's Exhibit No. 3, and State's Exhibit No. 4.

THE COURT: Exhibit No. 1 and 3 will be admitted; 2 and 4—you object to 2 and 4?

MR. WATSON: I objected to 1 and 2, I believe, Your Honor, and I want to renew my objection to 1 and 2.

THE COURT: What is the basis of your objection to 1 and 2.

MR. WATSON: Well, the basis for the objection to 1 and 2 is that it's— well, I'll withdraw my objection, Your Honor. I will not object to any of their exhibits.

THE COURT: All right. One, 2, 3 and 4 all be admitted without objection.

In the motion for new trial the fingerprints were referred to:

2. That the Court erred in overruling Defendant's Motion for Acquital (sic) at the close of the State's case, as the fingerprint evidence offered by the State in its case was not sufficient to make a case of its own independent strength without other evidence as a means of identification.

3. That the evidence given by the State's finger-print (sic) experts is strictly "opinion" evidence as to whether the fingerprint they had corresponded with those of the accused.

4. That the Court erred in permitting the "smudged" print to be admitted into evidence.

5. That the Court erred in permitting the latent fingerprint into evidence, as same was not visible or apparent to the naked eye, and admitting "opinion" evidence as to same being the finger-print (sic) of the Defendant.

\* \* \* \* \* \*

11. That the testimony of the finger-print (sic) experts was based strictly upon speculation and conjecture.

The complaint now made relating to unlawful arrest and the applicability of *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), first appears in the Rule 27.26 hearing.

The record of the original trial shows Exhibits 1 and 2 were lifted from a black plastic tray at the Stelman residence. They were partial prints and were taken with silver fingerprint powder. They were not necessarily visible to the naked eye (Original Transcript at 55 through 61). Appellant was on trial for burglarizing the Stelman residence.

Exhibit 3 is a fingerprint of appellant taken February 4, 1967, and bears his signature. He had been arrested on previous occasions. The record indicates that he had been convicted of at least six felonies. His brother-in-law testified that prisoners were fingerprinted every time they were taken to Central Police Station in St. Louis. This is mentioned because if any question had been raised that the fingerprints used for comparison were the result of an illegal arrest, it is likely that other earlier fingerprints would have been available for use.

The International Association of Identification Officers considered, according to the testimony, that eight to twelve characteristics as points of comparison are sufficient to be a valid basis for drawing a conclusion. Here the experts each counted sixteen. One expert further stated in answer to a question on cross-examination that he couldn't be mistaken about Exhibits 1 and 2 bearing the appellant's fingerprints.

No witness ever identified Exhibit 4 but it was marked. It is mentioned in the trial record only when it was assigned an exhibit number. The testimony, especially at the 27.26 hearing, relates to Exhibits 1 and 2 and their lifting and with the time when Exhibit 3 was made. Defendant said he was fingerprinted only once. His brother-in-law, Thomas Maddox, who was arrested with him, said, as is above noted, that he, Maddox, was fingerprinted every time he was ever taken to Central Police Station.

The testimony is not consistent on when these two men were first fingerprinted or when they were first arrested. The arrest was in connection with Jack's Lounge and a break in which occurred on the night of February 3, 1967. It seems, however, the first arrest was at 11:40 p. m. on February 3, which was a few hours after the Jack's Lounge break in (Transcript, Rule 27.26 proceeding at 54 and 59). Appellant was again arrested, based on a teletype message, about 2 p. m. on February 4, 1967, and before he had been released from custody from the Jack's Lounge arrest. This time he was arrested for a Florissant, Missouri, burglary. An officer, about 12:15 p. m. that day, had notified the detectives that latent fingerprint evidence from the Stelman burglary matched the left thumb prints of Schleicher. Schleicher thus contends that the prints were taken before 12:15 p. m. on February 4.

The police arrest cards show two arrests on February 3 and no arrest for February 4 and 5. It is agreed that the fingerprint card is signed by Schleicher and is dated February 4, 1967.

Appellant claims that his arrest for the burglary of Jack's Lounge was illegal. There is little evidence on the point in the record. This is one of the arguments in favor of an evidentiary hearing. We conclude, for reasons hereafter discussed, that *Davis v. Mississippi, supra,* is inapplicable here and that on the record here it is immaterial whether the arrest was legal or not.

Under 28 U.S.C. § 636(b) (Supp.1975), United States District Courts may establish local rules whereby United States Magistrates "may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States." These additional duties may include, but are not limited to:

(3) preliminary review of applications for posttrial relief made by indi-

viduals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing.

This statute was considered by the United States Supreme Court in *Wingo v. Wedding,* 418 U.S. 461, 472–473, 94 S.Ct. 2842, 2849, 41 L.Ed.2d 879 (1974). There the Court said:

> [The] section itself precludes District Judges from assigning Magistrates the duty of conducting evidentiary hearings. Review by Magistrates of applications for post-trial relief is thus limited to review for the purpose of proposing, not holding, evidentiary hearings. In connection with the preliminary review whether or not to propose that the District Judge hold an evidentiary hearing, we agree that Magistrates may receive the state court record and all affidavits, stipulations and other documents submitted by the parties. *Magistrates are prohibited only from conducting the actual evidentiary hearings.* [Emphasis added.]

■ There is nothing in the case before us to indicate that the Court's directive was not followed. The Magistrate outlined accurately the contentions and the evidence introduced at the two trials and recommended that an evidentiary hearing be denied. The final decision was properly made by the district court within the guidelines of the United States Supreme Court, *see Wingo v. Wedding, supra,* and this court, *see Noorlander v. Ciccone,* 489 F.2d 642 (8th Cir. 1973). Requiring the district court to do more would seriously hamper the extremely beneficial help of the United States Magistrate. At a time when there is much debate about the overcrowded judicial system, it would be a serious misjudgment to improperly interfere with one of the district court's most valuable aids.

As above noted, the Magistrate's report was complete and accurate. It was not argumentative. Without the last paragraph, which contained the recommendation, the Judge would have reached the same conclusion he did reach.

There has come to our attention the case of *Mathews, Sec. v. Weber,* —— U.S. ——, 96 S.Ct. 549, 46 L.Ed.2d 483, No. 74–850, 44 L.W. 4065, decided by the Supreme Court of the United States on January 14, 1976. It is clear from the opinion in the *Mathews* case that a magistrate may propose a recommendation and that the district judge "is free to follow it or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew." *Id.* at ——, 96 S.Ct. at 554, 44 L.W. at 4068. Later in the opinion it is stated:

> The Secretary argues that the magistrate will be a master-in-fact because the judge will accept automatically the recommendations made in every case. Nothing in the record or within the scope of permissible judicial notice supports this argument; nor does common observation of the performance of United States judges remotely lend the slightest credence to such an extravagant assertion. * * * We categorically reject the suggestion that judges will accept, uncritically, recommendations of magistrates. [*Id.* at ——, 96 S.Ct. at 556, 44 L.W. at 4069.]

■ We are next met with the question of whether or not the district court should have granted an evidentiary hearing. This turns mainly on whether or not the record made on the two trials in the Missouri courts with respect to the fingerprints is sufficient, and in view of the failure to object to the fingerprint exhibits whether the defendant had adequate counsel and representation by counsel.

It is the claim of appellant that under the doctrine of *Davis v. Mississippi, supra,* this case must be reversed because of the use of fingerprints taken after an illegal arrest. While the Magistrate and the U. S. District Judge and the Missouri Supreme Court have held that the prints were taken after a legal arrest, we do not need to make that determination.

*Davis v. Mississippi, supra,* was a case where, following mass arrests, a trial was held and at the trial the fingerprint evidence was offered and over objection raising the illegality of the arrests, was received. Here we have no mass arrests. We have an arrest of two men on suspicion of participating in a burglary which occurred only a few hours earlier. Here we do not have evidence received over objection. The claim that the fingerprint exhibits were the product of an unlawful arrest was not made until the 27.26 proceeding, when new counsel appeared. No objection to the exhibits was ever made during the trial. No constitutional objection was presented in the motion for new trial.[1] Experienced counsel chosen by Schleicher chose to question and argue to the jury only the reliability of the prints and the fact that the lifted prints were not visible to the naked eye. That choice does not now amount to plain error. *See Robinson v. United States,* 327 F.2d 618 (8th Cir. 1964).

■ Even if objection had been made there is a serious question as to whether or not this court can or should review the ruling of the Missouri court thereon. It is a well settled rule that habeas corpus cannot be used to question state court rulings on the admissibility of evidence. This panel stated in another case:

A writ of habeas corpus is not a substitute for an appeal. Errors in state court proceedings, not objected to at the time, unless they render the trial so fundamentally unfair that they constitute a denial of constitutional rights, do not justify federal court ac-

tion. *Rhay v. Browder,* 342 F.2d 345 (9th Cir. 1965); *Lorraine v. United States,* 444 F.2d 1 (10th Cir. 1971); *Margoles v. United States,* 407 F.2d 727 (7th Cir. 1969), cert. den. 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969). [*Sherrill v. Wyrick,* 524 F.2d 186, 190 (8th Cir. 1975).]

A leading case on this issue, not cited in *Sherrill,* is this court's opinion in *Atwell v. State of Arkansas,* 426 F.2d 912 (8th Cir. 1970), in which Chief Judge Gibson, writing for the court, stated the question of admissibility of evidence usually is a matter of state law procedure and does not involve federal constitutional issues; that ordinarily habeas corpus, being a collateral attack, is not considered to be a proper remedy for correcting errors in trial procedure and it is only where the errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding. The court quoted *Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

"Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure." [Citations omitted]. [*Atwell v. State of Arkansas,* 426 F.2d 912, 915.]

■ From time to time we need to be reminded that a failure to make objection even to a constitutional violation

1. We do not need to speculate on whether the dissent of Mr. Justice Stewart in *Davis* represents the view of the majority of the Supreme Court as now constituted. Mr. Justice Stewart said:

I do not disagree with the Court's conclusion that the petitioner was arrested and detained without probable cause. But it does not follow that his fingerprints were inadmissible at the trial.

Fingerprints are not "evidence" in the conventional sense that weapons or stolen

goods might be. Like the color of a man's eyes, his height, or his very physiognomy, the tips of his fingers are an inherent and unchanging characteristic of the man. And physical impressions of his fingertips can be exactly and endlessly reproduced. [*Davis v. Mississippi,* 394 U.S. 721, 730, 89 S.Ct. 1394, 1399, 22 L.Ed.2d 676.]

The Justice is not alone in the position he has thus expressed.

may not be plain error. The Second Circuit Court of Appeals has stated:

> In fact, on rebuttal, when Officer Holden testified to the statements only a general objection was made. In view of the failure of the appellant to specifically raise the *Miranda* point on trial, the question cannot be raised for the first time on appeal. *United States v. Bryant*, 480 F.2d 785, 791–793 (2d Cir. 1973); *United States v. Bell*, 464 F.2d 667, 674 (2d Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). [*United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973).]

Mr. Justice Blackmun, when a member of this court, stated in a much cited case, *Robinson v. United States, supra* at 622, 623, as follows:

> We shall assume, for present purposes only, that such unembellished facts would compel, against a proper challenge, a conclusion that the entry and hence the search were invalid.
> \* \* \*
> But, with this assumption made, it does not at all follow that the exhibits were improperly admitted at the trial. \* \* \* We do feel that, under the circumstances of this case, the defense is not now in a position to complain by afterthought. If an arrest and the search and the discovery of evidence are to be challenged on appeal, that challenge must be made in the first instance in the trial court. Fairness to that court and to counsel and to a reviewing court demands this. So do "fair procedural requirements". This presents no "plain error" or Rule 52(b) situation for there may be no error at all. *Somewhere the rights of the public and the rightful demands of orderly criminal procedure deserve protection, too.* [Emphasis supplied.]

■ The failure to object to the fingerprint evidence in this case does not reach constitutional levels unless it is material to the issue of the adequacy of counsel. We do not so regard it in this case. This court in *Cardarella v. United States*, 375 F.2d 222, 232 (8th Cir. 1967),

stated, "Perfect or errorless counsel is not required as a prerequisite to a fair trial consonant with due process." The burden of proving unfairness in the trial is on the appellant. *See McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974). Chief Judge Gibson, speaking for this court in *Johnson v. United States*, 506 F.2d 640 (8th Cir. 1974), has well stated:

> The defendant bears a heavy burden of proving unfairness resulting from alleged ineffective assistance of counsel. The standard to be applied in assessing a claim of ineffective or inadequate representation is based on the particulars of each case and is not easily reduced to any formula or "to precise words capable of rigid application." \* \* \* Trial tactics are often hard decisions made in the tempo of the adversary proceeding and, once made, are not subject to rejection in the event one misfires. [*Id.* at 645.]

We see the claim made here as the second-guessing by present counsel of competent counsel who exercised his best judgment on behalf of a guilty client. Since writing the foregoing, the opinion in *Franklin v. Wyrick*, 529 F.2d 79, No. 74–1140, decided by this court January 8, 1976, has been received. It is there pointed out that " 'mockery of justice' standard is not an impenetrable obstacle," and that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness. We agree.

■ We conclude that under the facts of this case the fingerprints, whether taken following a valid or an invalid arrest, not having been objected to, were properly in evidence. We conclude that their admission in evidence under the circumstances of this case does not amount to denial of due process.

Appellant had a fair trial in the Missouri court and in view of the availability of other fingerprints it would be useless exercise to order a new trial.

We affirm the action of the trial court.