Raymond BOOTHE, Petitioner,

v.

Donald W. WYRICK, Warden, Missouri State Penitentiary, Respondent.

No. 77–0830–CV–W–4.

United States District Court,
W. D. Missouri, W. D.

June 19, 1978.

Raymond Boothe, pro se.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Petitioner, presently confined at the Missouri State Penitentiary, Jefferson City, has filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging two convictions for first degree murder in the Circuit Court of Jackson County, Missouri. Petitioner was indicted for the murders during the March 1970 term of the state grand jury, and tried before a jury in February 1971. The jury returned guilty verdicts on February 5, 1971, and, in accord with Missouri law, fixed the punishment as death. On appeal, the Missouri Supreme Court overturned the imposition of the death penalty, *State v. Boothe*, 485 S.W.2d 11, 15 (Mo.1972) (en banc), *citing Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), but it affirmed petitioner's conviction in all other respects. Sometime later, petitioner filed a motion under Missouri Rule 27.26. The Circuit Court denied the motion after a hearing, and its decision was affirmed on appeal. *Boothe v. State*, 534 S.W.2d 74 (Mo.App.1976). This action followed.

On direct appeal, the Missouri Supreme Court set forth the facts underlying this case. During the evening of January 8, 1970, an intruder entered the mobile home of James Richard Lindsay (hereinafter Richard) and his wife. Richard approached the intruder and a struggle occurred. Two other men entered the mobile home to aid the intruder, and Richard's wife saw one of them stand over Richard with a handgun pointed at him. Richard's wife ran to the home of Richard's father, James William Lindsay (hereinafter William), for help. William told his younger son to get their shotgun and went to the trailer. When the younger son arrived, he saw three men leaving the scene. He found Richard and William mortally wounded by gunshots. Ruben Parker, a neighbor, heard the shots and saw three men leave the area.

Andrew Hansen, his wife, and son lived across the street from the Lindsay resi-

dence. Shortly after the shooting, Mrs. Hansen heard a loud knock on her back door and voices saying "Let us in, let us in." Two strangers came to the door. One, later identified as petitioner, said "We have been in a bad accident. My friend's hurt. We have to get him to a hospital." Mrs. Hansen awoke her husband who dressed and prepared to take the two men to the hospital. Petitioner admonished Hansen to hurry. According to the Hansens, petitioner's mouth was bleeding as though his teeth were "bashed in," and the other man's hands bled badly.

When Mr. Hansen and the two strangers went to the garage, Hansen noticed two police cars across the street at the Lindsay house. He suggested to petitioner and his companion that the police could provide faster transportation to the hospital. Petitioner then pressed a gun into Hansen's ribs and ordered him to start driving. Hansen drove several blocks before he was told to stop, and after being ordered out of the car, Hansen watched the two men drive off.[1] *State v. Boothe,* 485 S.W.2d 11, 12–13 (Mo. 1972).

On several occasions after the incidents described above, the police showed the Hansens different groups of photographs. Before making a positive identification of petitioner, the Hansens picked out several photographs of similar persons. On April 6, 1970, the Hansens saw a lineup which included petitioner, Cuckovich, a co-defendant, and four other men. *State v. Cuckovich,* 485 S.W.2d 16, 21 (Mo.1972), contains a detailed description of the lineup participants:

> As to the lineup it should be noted that No. 4 in the lineup was [petitioner], and it was proper that some of the men [in the lineup] should resemble him. [Cuckovich] was No. 2. The ages of the men in the lineup [in order] were 55 years, 57 years, 52 years, 40 years, 58 years, and 38 years. Their heights were 5′9″, 5′8″, 5′11″,

5′11″, 5′9½″, and 6′3″. All the men were white and all were at least partially gray.

At the lineup each member of the Hansen family identified petitioner as one of the men who came to their house on the night of the murder. Each member of the Hansen family also positively identified petitioner at trial. *Tr.* 619, 642, 665.

The original indictment in this case charged that petitioner, "on the 8th day of January, 1970, . . . did . . . unlawfully, wilfully, feloniously, premeditatedly and of his malice aforethought, [kill] one James Richard Lindsay with a dangerous and deadly weapon . . . ." *Id.* at 2. The indictment was dated April 17, 1970, and signed by the grand jury foreman. At a pre-trial hearing on December 14, 1970, the prosecutor asked leave to amend the indictment against petitioner by interlineation. The first interlineation added the words "either alone or acting in concert with others", and the second added "or during the commission of a burglary." After these additions, which were permitted by the state court over objection by petitioner's counsel, the indictment against petitioner read, ". . . [O]n the 8th day of January, 1970, one Raymond Boothe . . . either alone or acting in concert with others did . . . unlawfully, wilfully, feloniously, premeditatedly and deliberately and of his malice aforethought or in commission of a burglary [kill] James Richard Lindsay . . . ."[2] Trial on the charges began on February 1, 1971, some 48 days after the amendments.

Petitioner raises nine challenges to his conviction:

1. He was denied due process when the trial court permitted amendment of the indictment in that the amendments prevented the jury from considering any lesser included offense.

2. He was denied effective assistance of counsel because his attorneys did not

---

1. A more detailed exposition of the facts surrounding this case may be found in *State v. Cuckovich,* 485 S.W.2d 16 (Mo.1972), which involved the conviction of petitioner's co-defendant.

2. For convenience, the Court has underlined the interlineations inserted by the December 14, 1970, amendment.

move for a continuance in order to prepare a defense to the two new elements in the indictment or make any investigation that would enable counsel to defend against the amended indictments.

3. He was denied a fair trial because the trial court refused to give three instructions (See Tr. 846–48.) relating to the prosecution's burden of proof and the lesser offense of second degree murder.

4. He was denied due process because the amended indictment was ambiguous and charged nothing, was null and void on its face, and conferred no jurisdiction on the trial court.

5. He was denied a fair trial in that the state courts erroneously applied Missouri's jeofails statute, RSMo § 545.-030, to allow amendment of the indictment, thereby denying petitioner the right to instructions on second degree murder and manslaughter and allowing the indictment to charge both conjunctively and disjunctively.

6. He was denied due process when the trial court failed to suppress the identifications used against him, because the identification procedures were unnecessarily suggestive and because he was without counsel.

7. He was denied a fair trial when the prosecutor improperly placed his character and reputation in issue.

8. He was denied a fair trial when, over the objection of counsel, the trial court allowed a .38 caliber revolver allegedly used in the murder to be admitted into evidence.

9. He was denied a fair trial because there was insufficient evidence to convict him.

In response to the Court's order of January 23, 1978, petitioner also asserted that the amended indictment "was invalid to place petitioner on 'notice' that he could be convicted *without* the State having to prove deliberation and malice aforethought, and/or that as a result of the amended indictment petitioner would be precluded

from a second degree and manslaughter instruction." He also asserted that the amended indictment was inadequate to provide him with adequate notice of the nature and cause of the allegations against him.

Respondent initially argues that several of the grounds in this action have not been presented to any state appellate court prior to the filing of this petition. In particular, respondent argues that petitioner has not presented his claim concerning the failure to give a cautionary instruction on the prosecution's burden of proof to any state appellate court. Respondent also contends that petitioner presented his ineffective assistance of counsel claim to the Circuit Court in his Rule 27.26 motion but that he did not appeal from the Circuit Court's adverse ruling on the point. Thus, respondent asserts that these claims must be dismissed for failure to exhaust state remedies.

■ It is axiomatic that a state prisoner seeking federal habeas corpus relief must present each of his claims to the state appellate courts for determination before he files his federal habeas petition. *See, e. g., Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1972). The determination as to whether a claim has been presented to the state courts must be based upon the record and pleadings before those courts. *United States ex rel. Geisler v. Walters,* 510 F.2d 887 (3rd Cir. 1975); *Martin v. Parratt,* 412 F.Supp. 544 (D.Neb.1976).

■ From state court records, it is clear that petitioner has never presented his claim concerning the alleged failure to give a cautionary instruction to any state appellate court in any direct or collateral proceeding. Petitioner did present his claim of ineffective assistance of counsel to the Circuit Court in his Rule 27.26 motion, but did not appeal the adverse ruling on that point. *See Boothe v. State,* 534 S.W.2d 74, 75 (Mo.App.1975). The Court therefore finds that petitioner has not exhausted state remedies on his claim regarding the failure to give a cautionary instruction because he has never presented it to a state court. The

Court also finds that petitioner has not exhausted his claim concerning the ineffective assistance of counsel, because he did not appeal from the Circuit Court's adverse findings on this issue in its order denying petitioner's Rule 27.26 motion. *See Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975).[3]

▇ Because the Court has determined that petitioner has failed to exhaust state remedies on certain of the claims presented in this petition, the appropriate disposition of this action would be consideration of the exhausted claims and dismissal of the non-exhausted claims, *see, e. g., Triplett v. Wyrick,* 549 F.2d 57 (8th Cir. 1977), while petitioner pursues available remedies in the state courts. The exhaustion doctrine is not inflexible, however. It is a rule of comity rather than jurisdiction, and in appropriate circumstances, federal courts may consider technically unexhausted claims on their merits. After careful consideration, it appears that the interests of justice and judicial economy will best be served if the Court reaches the merits of the cautionary instruction and ineffective assistance claims. The Circuit Court heard evidence and entered findings of fact and conclusions of law on the ineffective assistance claim. The cautionary instruction claim involves a straightforward issue of law, without apparent dispute as to the underlying facts. Further delay while petitioner seeks piecemeal relief in the Missouri courts would amount to "a waste of judicial machinery . . . .," *Losieau v. Sigler,* 421 F.2d 825, 828 (8th Cir. 1971), a precious commodity in times of ever-expanding court dockets. Accordingly, the Court will consider the cautionary instruction and ineffective assistance claims on their merits.

Petitioner's claims are presented in no particular order, but they may readily be grouped into several categories for disposition. The first, fourth and fifth claims in the petition, and the allegation contained in petitioner's response to the Court's January 23, 1978, order, all involve alleged infirmities in the indictment; they will be considered together. The ineffective assistance of counsel claim and the lineup claim, which involve distinct constitutional issues, each will be considered separately. Finally, petitioner's third, seventh, eighth, and ninth claims, which involve alleged errors relating to instructions and evidence, will be considered together.

## THE INDICTMENT

Petitioner raises four claims challenging the indictment against him: (1) he was denied due process when the trial court permitted amendment of the indictment, because the amendments prevented the jury from considering any lesser included offense; (2) the amended indictment was ambiguous, charged nothing, null and void on its face, and conferred no jurisdiction on the trial court; (3) the trial court denied him due process when it permitted amendment of the indictment under the Missouri jeofails statute, because amendment denied petitioner the opportunity to receive instructions on second degree murder and allowed the indictment to charge both conjunctively and disjunctively, an alleged violation of Missouri law; and (4) amendment to the indictment altered the offenses from first degree murder to felony murder, allowing the prosecution to establish guilt by a reduced quantum of evidence and denying petitioner adequate notice of "the nature and cause of the allegations against him."

Petitioner places particular emphasis on *Watson v. Jago,* 558 F.2d 330 (6th Cir. 1977), to support his claims. In *Watson,* the defendant was indicted on state charges of premeditated and deliberate first degree murder after he allegedly shot and killed a grocery clerk while trying to purchase a six-pack of beer. During his opening statement, the prosecutor read the first degree murder indictment to the jury, but then commented that the defendant had committed the crime "while in the act of felony

---

3. Respondent concedes that petitioner has exhausted state remedies on the other claims presented in this petition.

murder." At the close of the state's case in chief, the prosecutor asked the court not to charge the jury on the issue of first degree felony murder, despite the fact that most of the testimony and cross-examination focused on the issue of whether the homicide occurred during the commission of a robbery. Over strenuous objection by defense counsel, who argued that felony murder required a separate count in the indictment, the trial court agreed to the prosecutor's request. *Id.* at 332–33.

The Sixth Circuit ruled that felony murder and first degree murder were separate offenses under Ohio law, and that allowing the prosecution to prove felony murder amounted to a constructive amendment of the indictment. It ruled that the constructive amendment, made after the trial began, denied the defendant due process because it denied him fair notice of the charges to be brought against him. *Id.* at 336–39.

Before turning to petitioner's allegations, it is necessary to set out the legal principles applicable to federal review of state indictments.

■■■■ The Fifth Amendment's guarantee of a grand jury indictment in capital cases has never been incorporated into the Fourteenth Amendment and is not applicable to the states. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). If a state adopts a grand jury system, the constitutional requirements binding the federal government to certain procedures in criminal cases, *see, e. g., Stirone v. United States,* 361 U.S. 212, 80 U.S. 270, 4 L.Ed.2d 252 (1960); *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); do not apply to the state proceedings; *Alexander v. Louisiana, supra* 405 U.S. at 633, 92 S.Ct. 1221.[4]

Thus, the sufficiency of or amendments to an indictment "are primarily matters of state law." *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420 (3rd Cir. 1975). Errors turning on the sufficiency of or amendments to an indictment are not reviewable in federal habeas corpus unless the indictment is constitutionally defective. *Scalf v. Bennett,* 408 F.2d 325 (8th Cir. 1970). At the same time, states are required by the Fourteenth Amendment to give defendants fair notice of the charges against them. *See, e. g., Cole v. Arkansas,* 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The Fourteenth Amendment also requires the states to observe the prohibition against double jeopardy. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Thus, if the indictment in petitioner's state case was sufficient to provide him with fair notice of the charges against him and sufficient to satisfy the double jeopardy clause, the Constitution has been satisfied, and further inquiry into procedural errors or variations is foreclosed.

On the notice issue tendered by petitioner, the Missouri Court of Appeals stated:

Our decisions . . . do not regard the indictment as altogether inviolable after return of the grand jury, but in the manner authorized by the criminal statute of jeofails (§ 545.030 RSMo 1969) allow amendment of form which does not prejudice the substantial rights of the accused.

. . . . .

[Petitioner] does not deny that the indictments fairly charged murder in the first degree but only that the amendments to statutory felony-murder changed the substance of the grand jury accusations against him and thus invalidated the convictions. The law does not consider, however, statutory murder (under § 559.010 as then in effect) a distinct offense but only one means of commit-

---

4. Federal requirements concerning racial or national composition of grand juries are binding

on the states. *Carter v. Jury Commission,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970).

ting murder in the first degree. *State v. Jewell,* 473 S.W.2d 734, 738 (Mo.1971). Thus, an accusation which charges murder in the first degree in the common form allows proof of statutory felony-murder. *State v. Jenkins,* 494 S.W.2d 14, 17 (Mo.1973). The amendments did nothing more than further specify the proof that the State intended to make, just as though the defendant had been granted a bill of particulars . . . . They worked no prejudice to the defendant but rather facilitated the confrontation of issues already implicit in the indictment as originally stated.

*Boothe v. State,* 534 S.W.2d 74, 76 (Mo.App. 1976).

▰ Under federal law, an indictment is sufficient if the defendant is sufficiently informed of the charges against him to make adequate preparation for his defense and plead the judgment as a bar to subsequent prosecution for the same offense. *United States v. Brown,* 540 F.2d 364 (8th Cir. 1976). In this case, the indictment as originally returned gave petitioner clear notice that he was charged with the killing of James William Lindsay with a .38 caliber revolver on January 8, 1970. This notice was more than sufficient to enable petitioner to adequately prepare his defense to the charge. The amendments to the indictment, as properly noted by the Missouri Court of Appeals, did not change the nature of the offense under state law, but simply focused upon the theory of the offense to be utilized by the prosecution. It was also clearly established at the time of indictment that felony-murder was not a separate offense in Missouri, but was instead a form of first degree murder. *State v. Bobbitt,* 215 Mo. 10, 114 S.W. 511 (1908). It was also established that once petitioner was indicted for the murder of James William Lindsay, he could never be retried for that killing if acquitted in the first trial. It must also be noted that the amendments to the indictment were made well before trial.[5]

▰ The Court therefore finds that the indictment in this case gave petitioner ample notice of the charges against him and allowed him to plead the judgment as a bar to subsequent prosecution for the same offense. All applicable constitutional requirements were satisfied, and amendment of the indictment did not deprive petitioner of any federally protected rights. On this basis, petitioner's claims that the amendments prevented the jury from considering lesser included offenses, that the amendment was ambiguous, charged nothing on its face, and did not confer jurisdiction on the trial court, that the trial court improperly applied the jeofails statute, and that the amendments altered the offenses do not state claims cognizable in this action.

Petitioner is not entitled to relief on any ground relating to the sufficiency or amendment of the indictment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Next, petitioner asserts that he was denied the effective assistance of counsel because his attorneys did not move for a continuance in order to prepare a defense to the two new elements in the indictment or make any investigation that would enable counsel to defend against the amended indictment. Petitioner advances no factual allegations to support this claim.

▰ As noted in *Morrow v. Parratt,* 574 F.2d 411 (8th Cir. 1978), the evaluation of a habeas corpus petition alleging ineffective assistance of counsel is a two step process in this Circuit. *Rinehart v. Brewer,* 561 F.2d 126 (8th Cir. 1977). First the defendant must show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. *Benson v. United States,* 552 F.2d 223 (8th Cir. 1977); *Pinnell v. Cauthron,* 540 F.2d 938

---

5. Thus, this case is completely distinguishable from *Watson, supra.* Under Ohio law, unlike the laws of Missouri, felony murder and first degree murder are separate offenses. Further, in *Watson,* the indictment was amended after trial began, not 48 days prior to commencement as occurred in this case.

(8th Cir. 1976); *United States v. Easter,* 539 F.2d 663 (8th Cir. 1976). Second, the defendant must show that he was materially prejudiced in the defense of his case by the actions or inactions of counsel. *Rinehart v. Brewer, supra; Benson v. United States, supra; Pinnell v. Cauthron, supra.*

■ Initially, it is clear that petitioner has alleged nothing whatsoever from which this Court could infer that his attorneys owed him a duty to seek a continuance after the indictment was amended or that petitioner was prejudiced in any way by their alleged omission. To be entitled to federal habeas corpus relief, petitioner must allege facts which, if true, would entitle him to relief. *Procunier v. Atchley,* 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); *Townsend v. Sain,* 372 U.S. 293, 88 S.Ct. 745, 9 L.Ed.2d 770 (1963). Failure to raise sufficient factual allegations ordinarily results in dismissal of the claim involved. In this case, however, facts contained in the trial record and the transcript of petitioner's Rule 27.26 hearing conclusively refute petitioner's allegation of ineffective assistance.

State court records show that on December 14, 1970, the date the indictments were amended, the state trial court entered an order reading: "Now it is ordered by the Court that said cause be and it is hereby re-set for trial on the 18th day of January 1971." *Tr.* at 14. On January 18, 1971, the following order was docketed in petitioner's criminal case: "Now on this day it is ordered by the Court that the following numbered and entitled causes be and they are hereby continued to the 8th day of February, 1971." Trial began on February 1, 1971, some 48 days after the indictments were amended. Thus, it is clear that petitioner received not one but two continuances after the indictments were amended.

The transcript of petitioner's Rule 27.26 hearing shows that he and his attorneys considered three possible defenses: an alibi defense based upon the testimony of one Carol Doty, a defense of diminished capacity, and a defense which asserted that petitioner had injuries or disabilities which made it impossible for him to participate in the killing. None of these defenses depended upon the characterization of the offense as first degree murder or felony murder for validity. At the close of the Rule 27.26 hearing, the Circuit Court found that petitioner's counsel has assiduously prepared defenses and interviewed potential witnesses. This finding, which was made after a full and fair evidentiary hearing and set out in a written record, is presumptively correct, 28 U.S.C. § 2254(d), and it must be credited by this Court on review. *Franklin v. Wyrick,* 529 F.2d 79 (8th Cir. 1976); *Wolfs v. Britton,* 509 F.2d 304 (8th Cir. 1975); *United States ex rel. Williams v. LaVallee,* 487 F.2d 1006 (2d Cir. 1973); *Riley v. Hocker,* 441 F.2d 552 (9th Cir. 1971). The Circuit Court's finding that petitioner received effective assistance of counsel in the preparation of a defense and the interview of potential witnesses precludes any finding by this Court that he was prejudiced by any alleged failure to seek a continuance.

In short, state records show that petitioner received two continuances after the indictments were amended, and that his attorneys effectively prepared a defense in his case. Petitioner is not entitled to relief on this ground.

## THE IDENTIFICATION

Next, petitioner asserts that he was denied due process when the trial court refused to suppress the identifications used against him. Petitioner asserts that the procedure used by the police was unnecessarily suggestive and that he was without counsel. As noted previously, there were six men in the lineup containing petitioner. Their ages were 55 years, 57 years, 52 years, 40 years, 58 years and 38 years. Their heights ranged from 5'8" to 6'3"; all but one were under six feet tall. At a pre-trial hearing on petitioner's motion to suppress the identifications, the Court found that the Hansen family, who were asked to pick petitioner out of the lineup were seated apart from each other while at the police station where the lineup was held.

Marjorie Hansen testified at the suppression hearing. She gave detailed testimony concerning the activities of petitioner and his cohort, and stated that she saw the two men for several minutes in well-lit surroundings. *Tr.* at 91–92. She stated that she asked one of the two to remain in the kitchen so that he would not get blood from his injured hands on the living room rug. *Id.* at 83. On the evening of the murder, Mrs. Hansen described one of the defendants as "a large, heavy set man, with a dark coat on, torn pocket, and . . . 'grey hair.'" *Id.* at 94. She was able to give a detailed account of each defendant's movements within her house. She also testified that prior to the lineup, she viewed a "lot" of pictures provided by the police. *Id.* at 95. She testified that she was separated from the members of her family during the lineup, that she remembered that one of the men in the lineup appeared to be shaking but that she could not recall which man, and no suggestions were made to her about which person or persons she should select from the lineup.

Paul Hansen, the Hansens' sixteen year old son, testified at the suppression hearing. He also gave detailed testimony concerning the actions of the two defendants while they were in the Hansen house. He gave the following descriptions of the two men: the first "had grey hair, he had thick lensed glasses, he had a dark coat on, and his hands were bleeding and his right side was—of his coat was torn." *Id.* at 107. Paul also testified that this man, who was subsequently identified as Charles Cuckovich, wore a nylon stocking on his head. *Id.* at 108. Paul also described petitioner as he appeared on the night of the murder: "He had black hair—I just saw the sides of his hair. He had a brown hat on with a red feather, I think, maybe it was a black hat, I'm not positive, he had a dark coat on, and his teeth were busted in into his mouth." *Id.* Paul described both men as heavy set and middle aged. *Id.* at 108–09. Paul testified that he sat five seats apart from his parents at the lineup and that there were six men in it. He stated that each of the six participants said, "My name is John Doe, and I live at so and so . . .," and "Please hurry." *Id.* at 112–13. Paul stated that all six men in the lineup appeared to be approximately the same weight and age, and that one appeared "shaky." *Id.* at 113. On cross-examination, Paul stated that on the night of the murder, he saw the petitioner and his codefendant for three to five minutes. *Id.* at 116. Paul also stated that he viewed a large number of police photographs and that he identified the two defendants from the photographs. *Id.* at 124. He stated that the men in the lineup "looked pretty much alike." *Id.* at 127.

Andrew Hansen testified at the suppression hearing. He also gave a detailed account of the actions of petitioner and Cuckovich while they were in his home and after he and the two men left for the hospital. Andrew testified that the men were in his house for three or four minutes. *Id.* at 138. He described one man as "fairly good-sized" and in his fifties. He stated that this man wore glasses, a nylon stocking on his head, and dark clothing. *Id.* Andrew gave a similar description of the other man who entered his house, and described his hat in great detail. Andrew also stated that the second man had dark hair, was in his fifties, and that his teeth were "bashed or bloody." *Id.* at 139–40.

Andrew stated that he attended two lineups, but could not identify anyone in the first. He also stated that he had been shown a large number of photographs by police officers and that he identified petitioner and Cuckovich from those photographs. He stated that he and his family were separated at the lineup, that all of the men in the lineup were approximately the same age, and that all seemed to be dressed alike. *Id.* at 142–44.

Darragh Kasakoff, an attorney for the Legal Aid and Defender Society and appointed counsel for petitioner, testified at the suppression hearing that he attended the lineup in which petitioner was shown to the Hansens. Kasakoff testified that the first participant in the lineup wore a black and white checked sport coat, grey pants, and carried a beige raincoat over his arm.

Kasakoff stated that this man was "visibly old and had a noticeably palsy." *Id.* at 189–90. The second man (Cuckovich) had a moustache, wore glasses, sport coat and pumpkin colored trousers. The third man wore a brown hunting cap, green work jacket and trousers, a yellow sweater, and his hair was black. The fourth man (petitioner) had a moustache, carried a cane, and wore glasses, a wine colored sport coat, and dark trousers. The fifth man, who apparently was a police officer, wore glasses, a white shirt, tie, and grey trousers; he was bald. The sixth man appeared to Kasakoff to be younger than the others. He was over six feet tall, wore a checked shirt, and a jacket type sweater with "yellowish" trousers. He had a full head of wavy "blackish-grey" hair. *Id.* at 189–91. Kasakoff stated that the Hansens sat several chairs apart from one another during the lineup.

■ Each of the Hansens positively identified petitioner and Cuckovich from the police photographs, at the lineup and at the suppression hearing. It is also to be noted that the lineup in question was held on April 6, 1970. Petitioner was indicted on April 17, 1970.

The applicable law to be applied to this claim is summarized in *United States v. Alden,* 576 F.2d 772, 777 (8th Cir. 1978):

A criminal conviction is unfairly wrought 'if based on identification evidence resulting from a pretrial confrontation which is so impermissibly suggestive as to create a very substantial likelihood of misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 113–16, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 198–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The determination of whether identification evidence should be suppressed must be based on all the circumstances and should focus on (1) the degree to which the pretrial confrontation was suggestive, (2) and exigencies justifying the suggestive procedure, and (3) the reliability of the identification. *Israel v Odom,* 521 F.2d 1370, 1373 (7th Cir. 1975); *United States ex rel. v. Sturg-*

*es* [sic], 510 F.2d 397, 402–03 (7th Cir. . . . 1975); *see Manson v. Brathwaite, supra,* 423 U.S. at 114, 97 S.Ct. 2243. The Supreme Court has emphasized, however, that the first two factors are merely a threshold. *See Neil v. Biggers, supra* at 198. Unnecessarily suggestive pretrial confrontation procedures, standing alone, do not violate due process. *Id,* "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite, supra.*

To this summary must be added the following point: counsel is not required at a preindictment lineup. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

■ As with his claim of ineffective assistance of counsel, petitioner has failed to present any factual allegations whatsoever to support his claim that the lineup was suggestive. And, as with the ineffective assistance claim, the state court records conclusively refute his assertion. The six men in the suppression hearing were approximately identical in terms of age, height, weight, dress and physical characteristics. The Hansens were separated at the lineup proceeding and made their choices without consulting one another. Each participant in the lineup made the same statements and movements, and there is nothing on the record to show that the police either advised the Hansens in advance as to which participants should be identified or conducted the lineup in such a way as to unduly focus attention on any particular participant. On the record of the suppression hearing, the Court agrees with the Missouri Supreme Court that the lineup used in this case was not impermissibly suggestive.

■ Additionally, even if it is assumed *arguendo* that the lineup was improper, it was constitutionally permissible to admit the Hansens' in-court identifications of petitioner. Each of the Hansens came into close contact with petitioner in well-lit surroundings, and each had a detailed memory of petitioner's actions in their house on the

night of the murder. Each of the Hansens gave a similar description of the two men who visited their house, and their identifications remained unchanged from immediately after the murders to trial. Each of the Hansens spoke with petitioner on the night of the murder, and each had several minutes in which to become acquainted with both him and Cuckovich. Given these facts, the Court must find that the Hansens' in-court identifications of petitioner had a very substantial basis outside of any pre-trial confrontation proceedings held in the case. Thus, under the rule of *Brathwaite, Neil,* and *Alden, supra,* they were admissible without regard to any defects that may have existed in the lineup proceeding.

Finally, because the lineup was conducted prior to petitioner's indictment, he had no right to the presence of counsel, *Kirby v. Illinois, supra*; in any event petitioner's claim that he was without counsel at the lineup is essentially frivolous, because, as noted previously, one of the two attorneys who represented him at trial was present at the lineup.

Petitioner is not entitled to relief on this ground.

## INSTRUCTIONS AND EVIDENCE

Remaining for consideration are four claims relating to the conduct of the trial court: (1) that petitioner was denied due process when the trial court refused to give three instructions relating to the prosecution's burden of proof and the lesser included offense of second degree murder; (2) that petitioner was denied due process when the prosecutor improperly put his character and reputation in evidence; (3) that petitioner was denied due process when, over objection, the trial court allowed a pistol allegedly used in the murder to be admitted into evidence; and (4) that there was insufficient evidence to support his conviction. These claims may be disposed of summarily.

■ At trial, petitioner requested instructions submitting the lesser included offense of second degree murder to the jury,

but his request was denied. It is well settled that failure to instruct on lesser included offenses is not cognizable in a federal habeas corpus proceeding. *Young v. Wyrick,* 451 F.Supp. 576 (W.D.Mo.1978); *United States ex rel. Jacques v. Hilton,* 423 F.Supp. 895 (D.N.J.1976); *United States ex rel. Parker v. Gray,* 390 F.Supp. 70 (E.D.Wis.1975); *Gist v. State of Oklahoma,* 371 F.Supp. 541 (E.D.Okl.1974). Petitioner is not entitled to relief on this ground.

■ Petitioner also requested an instruction which read:

The defendant is presumed to be innocent.

The fact that a defendant has been charged with an offense is not evidence against him. It creates no inference that any offense was committed or that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt.

*Tr.* at 846. The trial court refused to give this instruction. The refused instruction is virtually identical with instruction 2, *id.* at 836, and instruction 11, *id.* at 843–44, which were given by the trial court. Failure to give the repetitious instruction 18 was not so completely erroneous as to result in a complete miscarriage of justice. Hence, this claim is not cognizable in a federal habeas petition. *Sherrill v. Wyrick,* 524 F.2d 186 (8th Cir. 1976); *see also Bassett v. Smith,* 464 F.2d 347 (5th Cir. 1971); *Linebarger v. Oklahoma,* 404 F.2d 1092 (10th Cir. 1968); *Johnson v. Maryland,* 425 F.Supp. 538 (D.Md.1976).

■ Next petitioner asserts that the prosecutor improperly put his character and reputation in issue during trial. He presents no factual allegations to support this claim. Assuming that petitioner refers to the two incidents described in detail in *State v. Boothe,* 485 S.W.2d 11, 15 (Mo. 1972), which both relate to testimony of police officers that might have implied that petitioner was in custody on other charges before he was indicted for murder, this claim is not cognizable in a federal habeas

petition. Even if the Court assumes that admission of the officers' ambiguous and passing remarks concerning petitioner's confinement was erroneous, the error involved was not so "gross", *Taylor v. Minnesota,* 466 F.2d 1119, 1121 (8th Cir. 1972), or "conspicuously prejudicial", *United States ex rel. Cannon v. Maroney,* 373 F.2d 908, 910 (3d Cir. 1967), as to deny petitioner a fair trial. Thus, it is not cognizable in this petition. *Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir. 1976); *Schleicher v. Wyrick,* 529 F.2d 906 (8th Cir. 1976); *Atwell v. Arkansas,* 426 F.2d 912 (8th Cir. 1970).

 Petitioner asserts that the trial court denied him due process when it admitted a pistol found at the scene of the murder into evidence. The correctness of a state court's rulings on the admissibility or sufficiency of evidence is not cognizable in federal habeas corpus review. *Wilson v. Parratt,* 540 F.2d 415 (8th Cir. 1976); *Brooks v. Rose,* 520 F.2d 775 (6th Cir. 1975); *Cunha v. Brewer,* 511 F.2d 894 (8th Cir. 1974). Petitioner is not entitled to relief on this ground.

Finally, petitioner asserts that there was insufficient evidence to support his conviction. In assessing this claim, the guilty verdict reached at trial must stand unless the record is so devoid of evidentiary support that a due process issue is raised. *Wilson v. Parratt, supra; Brooks v. Rose, supra; Cunha v. Brewer, supra; United States ex rel. Johnson v. Illinois,* 469 F.2d 1297 (7th Cir. 1972); *Hendricks v. Swenson,* 456 F.2d 503 (8th Cir. 1972). The evidence summarized by the Missouri Supreme Court in *State v. Boothe,* 485 S.W.2d 11 (Mo.1972), is more than sufficient to support the guilty verdict. Petitioner is not entitled to relief on this ground.

The Court's review of the State records in this case shows that petitioner received a fair hearing on the merits of his claims in the Missouri courts on direct appeal and on review of his Rule 27.26 motion, and that the Missouri courts properly applied federal legal standards in all cognizable respects. The Court therefore finds that petitioner has not carried his burden of showing that the state court findings are not supported by the record. 28 U.S.C. § 2254(d). His claims may be denied without a hearing. *Jones v. Swenson,* 469 F.2d 535 (8th Cir. 1972); *Tyler v. Swenson,* 427 F.2d 412 (8th Cir. 1970); *Randall v. Wyrick,* 441 F.Supp. 312 (W.D.Mo.1977); *Russell v. Wyrick,* 395 F.Supp. 643 (W.D.Mo.1974); *see also LaVallee v. DelleRose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

For the reasons stated above, it is

ORDERED that this petition for writ of habeas corpus should be and it is hereby denied.