James H. ROLLINS, Appellant,

v.

Donald WYRICK, Warden, Missouri State Penitentiary, Appellee.

No. 77–1521.

United States Court of Appeals, Eighth Circuit.

Submitted April 3, 1978.

Decided April 11, 1978.

Bruce E. Houdek, Millin & Houdek, Kansas City, Mo., for appellant.

John D. Ashcroft, Atty. Gen. and Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

Petitioner James Henry Rollins appeals from the district court's [1] denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

On March 20, 1968, a jury in Boone County, Missouri, found Rollins guilty of illegally dispensing marijuana in violation of Mo. Rev.Stat. § 195.020 (Vernon), and imposed a sentence of five years imprisonment in the Missouri State Penitentiary.[2] This judgment was appealed and affirmed by the Missouri Supreme Court on January 12, 1970. *State v. Rollins,* 449 S.W.2d 585 (Mo. 1970). Rollins' petition for writ of certiorari to the United States Supreme Court was denied on June 22, 1970. *Rollins v. Missouri,* 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573 (1970). He has exhausted his state remedies. Rollins began serving his sentence on this charge on February 6, 1976.[3]

On June 16, 1976, Rollins filed a petition for writ of habeas corpus in the Western District of Missouri. On February 7, 1977, an evidentiary hearing was held on his petition and on May 23, 1977, the district court issued a memorandum opinion and judgment denying the petition.

The sole issue raised on this appeal is whether the denial of Rollins' motion for a continuance resulted in a violation of his constitutional right to a fair and impartial jury. *See Murphy v. Florida,* 421 U.S. 794, 799–803, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Rollins contends that excessive pretrial publicity concerning his civil rights activities and his arrest and expulsion from the university,

the setting of his trial on the same date as a referendum on a fair housing ordinance in Columbia, Missouri, and certain comments made by three prospective jurors during voir dire examination cumulatively prevented him from receiving a fair trial.

The facts adduced at trial and in petitioner's hearing in the district court indicate that Rollins was a resident of St. Louis, Missouri, until he enrolled at the University of Missouri in Columbia in 1961. He immediately became active in the civil rights movement in Columbia. Eventually he became an officer of CORE, a militant civil rights organization, and participated in a number of activities which were controversial, at least among a number of white citizens of Columbia.

After he completed his undergraduate studies Rollins enrolled in the University of Missouri Law School in Columbia. In March of 1967 Rollins was arrested on the charge of dispensing marijuana. As a result of his arrest Rollins was expulsed from the University before completion of that semester and there was substantial coverage by the news media concerning the circumstances of his dismissal.

On January 2, 1968, Rollins' trial was set for March 19, 1968. On February 5, 1968, a fair housing ordinance was introduced in the Columbia City Council and on February 19 that body set the date for an election on that issue as March 19, 1968. The election, which had become a racially-charged issue, received a substantial amount of coverage in the local newspaper.

On the morning of trial Rollins' attorney moved for a continuance upon the grounds that the trial was to be held on the same date as the referendum on the fair housing

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

2. The trial judge instructed the jury that if they found the defendant guilty they were to "assess his punishment at imprisonment in the penitentiary for a term of not less than two years nor more than twenty (20) years, or by confinement in the Boone County Jail for a term of not less than six months nor more than one year."

3. Petitioner was free on bond pending the disposition of his appeal to the Missouri Supreme Court and his petition for writ of certiorari to the United States Supreme Court. The start of his sentence was further delayed because he was in custody as a result of separate convictions for manslaughter and mail fraud in other jurisdictions.

ordinance. The motion for continuance was denied, no motion for change of venue was filed, and Rollins' counsel announced he was ready for trial.

Rollins' attorney was permitted to conduct extensive voir dire examination, individually questioning the prospective jurors. Four of the veniremen were challenged for cause by petitioner, and all four challenges were sustained by the trial court.

In the trial the prosecution presented evidence which sufficiently proved Rollins' guilt. Testimony showed that on the evening of March 5, 1967, Sharon Turner was entertaining a boyfriend, Larry Duncan, at her apartment. At approximately 10:30 p. m., Rollins appeared at the front door and asked Turner if her roommate, Mary Monsees, was home. When told that she was not home, Rollins left a bag with Turner and told her to give it to Monsees. Duncan testified that he saw Rollins hand the package to Turner. After Rollins left, Duncan opened the package and discovered that it contained approximately one and one-half pounds of marijuana. Duncan placed a small sample in an envelope and put the rest in Monsees' room. When Monsees returned home at approximately 12:15 a. m. Turner informed her that Rollins had been by and left a package for her and that he wanted her to call. Monsees testified that she then called Rollins and he asked her: "Did you get the package that I left there for you?"

The following day Duncan took the sample from the bag to the police. After an analysis of the sample, a search warrant was obtained and the package was seized from Monsees' room. An analysis showed that the package contained marijuana. Rollins denied any participation in the crime and produced witnesses that testified he was elsewhere on that evening.

In the leading case on pretrial publicity, *Sheppard v. Maxwell,* 384 U.S. 333, [86 S.Ct. 1507, 16 L.Ed.2d 600] (1966), the Supreme Court stated:

> Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances. Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.

*Id.* at 362–63, 86 S.Ct. at 1522.

This passage was cited by the Missouri Supreme Court and the district court. These courts applied the standard established by the Supreme Court and found no violation of Rollins' constitutional right to a fair trial. After careful consideration of all the facts and circumstances of this case we are convinced that these courts were not in error.

Although the arrest of Rollins and his subsequent expulsion from law school received substantial coverage in the newspaper, it must be remembered that these events occurred almost a full year before the trial of this case. Furthermore, none of these articles were inflammatory in nature. They did not comment upon Rollins' guilt or innocence, but merely contained factual statements reporting various steps of the proceedings against Rollins. *See Murphy v. Florida, supra,* 421 U.S. at 802, 95 S.Ct. 2031.

It is also true, as Rollins asserts, that the election on the fair housing ordinance was a controversial issue in Columbia and generated heated discussions and advertisements in the newspaper. However, Rollins' own testimony indicates that he was not a major participant in this controversy. At most he spoke at one rally in support of the ordinance and was mentioned in one advertisement against the ordinance. In the months preceding the election Rollins resided in St. Louis and made only infrequent weekend trips to Columbia.

The motion for continuance was raised on the day the trial was scheduled to begin. By that time the trial of this matter had already been delayed several months. Two of the prosecution's key witnesses had traveled from out of state to be present at the trial. At no time was a change of venue ever requested by Rollins. We are not persuaded that simply because the election on the fair housing ordinance was the same day as Rollins' trial began that the trial judge was required by the Constitution to grant a continuance.

An examination of the record of the voir dire examination does not reveal that a hostile attitude pervaded the courtroom which prevented Rollins from receiving a fair trial. Of approximately 37 prospective jurors, 12 had heard of the case. An overwhelming majority of the prospective jurors expressed their complete willingness to decide the charges against Rollins solely on the basis of the evidence presented at trial and to presume that he was innocent until and unless he was proven guilty. Of the three jurors who indicated otherwise only one expressed any prejudice against Rollins personally.[4] All three were promptly stricken for cause and the trial court instructed the other prospective jurors to disregard the comments. Each of the four jurors challenged for cause by Rollins was dismissed by the trial court. It is not required that jurors be totally ignorant of the facts and issues involved in a case.

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Murphy v. Florida, supra,* 421 U.S. at 800, 95 S.Ct. at 2036; *quoting from Irvin v. Dowd, supra,* 366 U.S. at 723, 81 S.Ct. 1639. *See also United States v. Delay,* 500 F.2d 1360, 1365 (8th Cir. 1974); *United States v. McNally,* 485 F.2d 398 (8th Cir. 1973).

In sum, the record, in particular the newspaper articles offered as exhibits and the transcript of the voir dire examination of the jurors, does not support Rollins' contention that the failure to grant the continuance resulted in the impaneling of a jury prejudiced against Rollins which thereby deprived him of his constitutional right to a fair trial.

The judgment of the district court denying ·Rollins' petition for a writ of habeas corpus is affirmed.

Affirmed.

---

4. One of the veniremen was excused for cause after he stated that: "There is a pretty good chance he is guilty, or he wouldn't be here." A second venireman was dismissed after he stated that he had "bad experiences with marijuana in the Army" and that he was "very bitter against it" and wouldn't "make a good juror in this case." A third prospective juror was excused for cause because she stated that "because of the Defendant's political activities" she was "inclined to have prejudice towards him on just about any count." The remaining venireman struck for cause was eliminated from the jury panel after he stated he might encourage the jury to come to a speedy verdict because of the demands of his job.