**Robert R. CODY a/k/a James Henry Rollins, Petitioner,**

v.

**MISSOURI BOARD OF PROBATION AND PAROLE et al., Respondents.**

No. 78–0405–CV–W–3.

United States District Court,
W. D. Missouri, W. D.

April 10, 1979.

Robert R. Cody, pro se.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

### MEMORANDUM AND ORDER

RUSSELL G. CLARK, District Judge.

This action, a habeas corpus petition under 28 U.S.C. § 2254, currently pends on petitioner's response to the Court's order of March 14, 1979. In that order, the Court noted that petitioner had filed numerous other actions in this Court, that at least one, *Rollins v. Wyrick*, No. 76–CV–0358–W–2, had been denied on its merits after a full evidentiary hearing in which petitioner was represented by counsel and affirmed on appeal, *Rollins v. Wyrick*, 574 F.2d 420 (8th Cir. 1978), that the claims presented in the motion to amend filed in this case accrued at the time of his original trial, that petitioner had actively pursued his rights through *pro se* litigation, and that petitioner had more than the usual layman's knowledge of law in that he had completed two years of law school at the time of his conviction. On this basis, the Court directed petitioner to show cause within fifteen days why this action should not be dismissed as an abuse of the writ.

In response, petitioner has filed a thoughtful statement. Summarizing briefly, it states that the claims presented in this action had not yet been presented in the Missouri appellate courts at the time 76–CV–0358–W–2 went to trial and that he

endeavored to present them as soon as he had exhausted state remedies. He also asserts that his jail-time credit claim, discussed more fully below, was not trial-related and did not accrue until well after 76–CV–0358–W–2 began. On this basis, he argues that he has not abused the writ of habeas corpus.

To understand the issues involved in this action at this time, it is necessary to recap the past progress of this action. As originally filed, the petition raised one claim: that Missouri prison officials refused to credit time spent by petitioner in federal custody against his state sentence. The state submitted a pleading in opposition to this claim, and petitioner filed a traverse. On October 30, 1978, petitioner filed a motion to amend his petition so as to add four other claims:

1. that he was denied the effective assistance of counsel;

2. that RSMo § 195.020 was unconstitutional as applied to petitioner because it did not require the state to prove that he knowingly dispensed marijuana;

3. that RSMo § 195.080, a related statute, was also unconstitutional; and

4. that there was insufficient evidence to support the jury's verdict.

The Court granted leave to amend, noting the general policy that all habeas corpus claims should be raised in a single petition rather than piecemeal, and directed the state to submit a second response. The state did so, alleging that the four new claims were exhausted but without merit, and petitioner filed a second traverse.

█ Prior to a full discussion of the merits of petitioner's claims, it is necessary to discuss the abuse issue because this action may be dismissed wholly or partially if part or all of it is an abuse of the writ. *Green v. Wyrick*, 462 F.Supp. 357 (W.D.Mo.1978).

█ The abuse doctrine is based upon a single, well-established principle of federal law: "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, [or] to entertain collateral proceedings whose only

purpose is to vex, harass, or delay." *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). As the Court noted in a past order, this policy reflects the overwhelming interest that criminal matters are, as far as possible, finally litigated promptly and expeditiously. *Sunal v. Large,* 332 U.S. 174, 182, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); *Comment, Restricting the Indigent's Right to a Transcript,* 1976 Wash.U.L.Q. 318, 332–33 n. 68 (1977).

Abuse of the writ is codified in 28 U.S.C. § 2244, which provides:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States . . . release from custody or other remedy on an application for writ of habeas corpus, a subsequent application for writ of habeas corpus need not be entertained by a Court of the United States . . . unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, *and* unless the court . . . is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

[Emphasis added.] A similar provision has been adopted as part of the federal rules governing habeas corpus petitions. Rule 9(b), *Rules Governing Section 2254 Cases in the United States District Courts.*

Certain practices that have long been considered abuse of the writ are described in *Green v. Wyrick,* 462 F.Supp. 357, 360 (W.D.Mo.1978):

Past discussions of abuse have focused on several practices, including the deliberate withholding of known grounds in the hope of obtaining two or more hearings, deliberate delay in the presentation of claims, or presentation of claims that were abandoned in prior actions.

But, as *Green* notes, new forms of abuse have emerged with the relaxation of standards governing the filing and processing of *pro se* litigation. Under present standards, it is possible for a litigant to present a colorably cognizable action that is in fact an attempt to circumvent the orderly processes erected by the state and federal governments for review of criminal convictions. *Id.* at 360–61. These cases, though facially serious attacks upon a prior criminal conviction, are, in fact, attempts to avoid state procedural rules or past decisions adverse to the claims raised. It is these newer forms of abuse that pose the most serious difficulties for the Courts.

In this action, petitioner argues that his failure to present the four claims in his motion to amend was due to the fact that he did not exhaust state remedies on them until mid-1978. Petitioner does not state and the record does not reveal why he failed to exhaust state remedies on these claims *at the same time* he pursued state relief on the prejudicial pretrial publicity claim presented in 76–CV–0358. As a person with substantial training in the law, petitioner cannot seriously argue that he was unaware at the time of his direct appeal that the statutes under which he was indicted could be held unconstitutional; these principles are familiar to all first-year law students and to many laymen. Petitioner's claims concerning the sufficiency of the evidence against him and the alleged failure of his trial attorney to secure the testimony of an alibi witness were apparent during trial. Despite the obviousness of these claims, they were not raised in petitioner's direct state appeal, *State v. Rollins,* 449 S.W.2d 585 (Mo.1970), or in any postconviction proceeding until 1976, some eight years after petitioner's trial and six years after the direct appeal. Petitioner offers no explanation for this failure.

 Petitioner does assert, however, that the problems inherent in exhaustion and abuse leave him in a "Catch-22 situation":

On the one hand, this court is implying that petitioner has abused the great writ

because he didn't raise all of his issues, including those five presented in this petition, in case No. 76–358–CV–W–2, and on the other hand this court has made it clear that it will not entertain those claims unless petitioner has first exhausted all available state remedies . . .
This is what is known as a Catch-22 situation for the petitioner. The two alternatives effectively cancel each other out. This would leave petitioner without recourse to the Courts.

*Petitioner's Answer to Show Cause Order,* at 1. This assertion is erroneous. There is no "Catch-22" embodied in the exhaustion and abuse doctrines. As a practical matter, the problem of abuse may be avoided in all but the most exceptional cases if the petitioner simply refrains from filing any federal habeas corpus petition until he exhausts state remedies on *all* of the claims he may wish to present in his federal petition and, in the first federal petition, presents *all* available claims. Where the petitioner presents one exhausted claim in his first federal petition but waits to exhaust state remedies and present other claims to the federal court until after the first petition has been determined, he has, by definition, abused the writ of habeas corpus by attempting to litigate in piecemeal fashion claims that could have been presented earlier. See *Sanders v. United States, supra,* at 18, 83 S.Ct. 1068.

In this case, all of the evidence shows that, with respect to the four claims in the motion to amend, petitioner withheld them from consideration by any state or federal court until after his first federal habeas corpus petition engaged in abuse of the writ of habeas corpus, and his four claims in the motion to amend may be dismissed on that basis.

The fifth claim in this action—jail-time credit—stands on a different footing, however. As petitioner properly notes, the credit claim did not first accrue until ap-

proximately the same time as his first federal habeas corpus petition, long after he had pursued his direct state appeal. While the preferable procedure would have been dismissal of No. 76–CV–0358 without prejudice pending exhaustion of the jail-time credit claim, the fact remains that petitioner did begin to pursue state relief on the claim as quickly as may have been possible. Under these circumstances, the Court holds that petitioner has not abused the writ with respect to this claim. Because respondent concedes that petitioner has exhausted state remedies on this claim, it may be considered on its merits.

To understand the jail-time credit claim,[1] it is necessary to engage in a somewhat lengthy factual recitation.[2]

As noted in other opinions by the Court, petitioner was convicted of dispensing marijuana in Missouri on May 27, 1968. He was admitted to bond pending appeal, and prosecuted an unsuccessful state appeal and a petition for writ of certiorari in the United States Supreme Court. *Rollins v. Missouri,* 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573 (1970).

Petitioner absconded from the state of Missouri during the pendency of his certiorari petition. He forfeited his appeal bond. On September 9, 1974, federal postal authorities arrested petitioner in New York City on federal mail fraud charges. Petitioner was ultimately convicted on two counts of mail fraud, 18 U.S.C. § 1341, and sentenced to concurrent terms of three and one-half years imprisonment. A fine of $2,000 was also imposed. The Second Circuit affirmed petitioner's federal conviction. *United States v. Rollins,* 522 F.2d 160 (2d Cir. 1975). The United States Supreme Court denied a petition for writ of certiorari. *Rollins v. United States,* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976).

---

1. Strictly speaking, this claim is a request for credit for time spent in confinement pursuant to a federal sentence. For convenience, however, the Court will refer to the claim as seeking "jail-time" credit.

2. The parties are in essential agreement concerning the relevant facts.

While in federal custody, petitioner was convicted of two counts of voluntary manslaughter in the Circuit Court of Alameda County, California. In November 1975, he was sentenced to consecutive indeterminate sentences of six months to fifteen years, each to be served upon conclusion of any other state or federal term of imprisonment. After his California proceedings, petitioner was returned to federal custody.

As noted above, federal authorities arrested petitioner in New York on September 9, 1974. It appears, however, that Missouri officials did not become aware of this fact until about one month later. On October 3, 1974, the Prosecuting Attorney of Boone County filed a detainer with New York area federal officials apprising them of petitioner's state sentence. The detainer was lodged but not executed at that time.

Upon petitioner's return from California, he was taken to the federal penitentiary at Lewisburg, Pennsylvania, to begin his federal sentence. When it became apparent that the federal sentencing judge had intended petitioner's federal sentence to be consecutive to his state sentence in Missouri, arrangements were made to transfer petitioner to Missouri. By letter of December 31, 1975, the Boone County Prosecutor wrote the warden at Lewisburg asking that petitioner be prepared for transportation to Missouri. On February 6, 1976, prior to expiration of petitioner's federal sentence, federal marshals delivered him to Missouri authorities who transported petitioner to the Missouri State Penitentiary so that he could begin his Missouri sentence.

Some time after petitioner arrived at the Missouri State Penitentiary, so that he could begin his Missouri sentence.

Some time after petitioner arrived at the Missouri State Penitentiary, the federal trial judge in New York modified petitioner's sentence so that the time remaining on it would be served concurrently with petitioner's Missouri sentence. Petitioner concluded his federal sentence on May 19, 1977. On April 6, 1978, Missouri parole officials paroled petitioner to his California sentences, which he is now serving.

Petitioner's jail-time credit claim asserts that he is entitled to credit for 515 days spent in federal custody against his Missouri sentence "because it was the federal authorities mistake that is causing the confusion and the State of Missouri had exclusive jurisdiction of the Petitioner on the date of his arrest and it continued thereafter." Petitioner cites a number of cases that allegedly support his position.

Analysis of this question begins with *Harkins v. Wyrick,* 589 F.2d 387 (8th Cir. 1979), which presented a closely related question:

On September 3, 1968, Harkins was arrested in Poplar Bluff, Missouri, on suspicion of committing armed robbery of the Puxico State Bank. The next morning he was released on bond. In February 1969, federal authorities arrested Harkins for the robbery of a bank in Tennessee. While in federal custody, Harkins was confined either in Memphis, Tennessee, or the United States Medical Center for Federal Prisoners at Springfield, Missouri. The Circuit Court of Butler County, Missouri issued a writ of habeas corpus ad prosequendum pursuant to which United States Marshals returned Harkins to Poplar Bluff, Missouri, where on March 28, 1969, he entered a plea of guilty to the state robbery charges and was sentenced. Immediately after imposition of the sentence, United States Marshals took Harkins to Memphis, Tennessee, for further proceedings in the United States District Court for the Western District of Tennessee. Following hearings concerning his mental competency to stand trial, that Court committed him pursuant to 18 U.S.C. § 4246 to the United States Medical Center for Federal Prisoners until he should be mentally competent to stand trial or until the charges against him should be otherwise disposed. On September 16, 1969, Missouri authorities lodged a detainer against Harkins. Harkins remained at the Medical Center until the criminal charges pending in the United States District Court for the Western District of

Tennessee were dismissed. Thereafter, he was immediately released to Missouri authorities pursuant to the previously filed detainer and the Missouri Department of Corrections received him on October 19, 1971.

*Id.* at 389. Missouri officials refused to credit the time Harkins spent in federal custody against his state sentence, and their decision was affirmed by the Missouri Supreme Court in *Harkins v. Lauf,* 532 S.W.2d 459 (Mo. en banc 1976). Harkins then filed a habeas corpus petition in this Court alleging that the failure to give credit for his federal sentence violated due process and equal protection. In affirming the decision of this Court that Harkins was not entitled to credit, the Court of Appeals made the following comments concerning the due process argument:

> Harkins was not in federal custody pursuant to a void or voidable conviction; his confinement was not the result of any mistake. Instead, federal authorities retained custody of his person because of his questionable mental competency. The concept of fundamental fairness that requires the Government to remedy the injustice imposed upon a prisoner who could have been serving an existing sentence were he not detained on an invalid sentence does not apply to petitioner.

*Id.* at 391. The Court of Appeals also rejected Harkins' equal protection and statutory construction arguments.

The reasoning of *Harkins* appears to apply with full force to this action, thereby making it impossible for petitioner to prevail on his jail-time credit claim unless he can somehow distinguish the case. To do so, petitioner provides several cases as authority for his claim that he is entitled to credit, including, most notably, *United States v. Croft,* 450 F.2d 1094 (6th Cir. 1971), and *Smith v. Swope,* 91 F.2d 260 (9th Cir. 1937). More closely apposite, however, is *Application of Nelson,* 434 F.2d 748 (8th Cir. 1970), a case which supports denial of credit.

Nelson was convicted of federal charges in the District of South Dakota on October 7, 1966, but he remained free on an appeal bond. The Court of Appeals dismissed his appeal on April 17, 1967, and issued a mandate directing Nelson to surrender. Nelson could not do so, however, because he was in the custody of South Dakota state officials on burglary charges. While awaiting trial on the charges, petitioner could not make bail and was lodged in a county jail until his conviction and sentencing. After being sentenced to ten years imprisonment, state officials took Nelson to the South Dakota penitentiary.

While in state custody, Nelson asked the United States Marshal to take custody of him so that he could begin his federal sentence. A deputy marshal sought Nelson's release, but state officials refused to acquiesce. The Marshal made no further attempts to obtain custody except to file detainers at Nelson's places of confinement. In 1969, Nelson obtained the reversal of his state conviction, and, when the state declined to retry him, he was released to the federal detainer. Federal officials refused to give Nelson credit for his twenty-eight months in state confinement, *id.* at 749–50, and Nelson filed a habeas corpus petition.

Petitioner argued that he had constructively served his federal sentence while he served his state sentence. The Court of Appeals rejected this argument, stating:

> [The physical custody of Nelson in South Dakota state facilities] resulted from the act of South Dakota and not of the federal government. It is well-settled as between a state and the United States that the governmental entity holding physical possession of a defendant may proceed in its sovereign capacity with a trial, sentencing and imprisonment. *Strand v. Schmittroth,* 251 F.2d 590, 599 (9th Cir. 1957). See *Nolan v. United States,* 163 F.2d 768, 771 (8th Cir. 1947); *Banks v. O'Grady,* 113 F.2d 926, 927 (8th Cir. 1940).

> \* \* \* \* \* \*

When South Dakota authorities arrested Nelson and took him into custody, this custody represented state custody and not that of federal authorities. Having physical custody, the state of South Dakota

was entitled to incarcerate petitioner notwithstanding the mandate calling for him to serve his federal sentence. Without consent of state authorities, the Marshal possessed no means of enforcing the federal mandate.

*Application of Nelson,* 434 F.2d at 750–51.[3] In reaching this conclusion, the Court of Appeals expressly approved a holding of this Court in *Kellett v. United States,* 162 F.Supp. 791 (W.D.Mo.1958). Kellett, who was free on an appeal bond from a federal conviction in Texas, was convicted of armed robbery in a Missouri state court, sentenced and confined in a state facility. Kellett argued that he was entitled to credit against his federal sentence for time spent in state custody. This Court rejected that contention:

> [P]ending his appeal to the Court of Appeals, he was released on bond. Upon his release, petitioner was no longer in actual physical custody of federal authorities. And not being in that custody, he was not immune from prosecution by another sovereign.
>
> \*　\*　\*　\*　\*　\*
>
> The petitioner, by his wrongful acts while free on bond pending his appeal, made it impossible for the United States to retake him upon disposition of the appeal. His federal sentence was tolled until he could be retaken by federal authorities. Under these circumstances, petitioner's federal sentence could not have run during the time he was in state custody and he is not entitled to have his state sentence or any part of it computed as service of his federal sentence.

*Kellett v. United States,* 162 F.Supp. 791, 794, 796 (W.D.Mo.1958).

■ Given *Harkins, Nelson* and *Kellett,* the Court concludes that petitioner is not entitled to credit on his Missouri sentence for time spent in federal custody. Under

*Nelson,* once federal authorities gained custody of petitioner by arresting him for federal crimes independent of his state offense, they were entitled to try, convict and incarcerate him without having to yield him to Missouri officials until expiration of his sentence. And, under *Kellett,* since petitioner's own affirmative actions—his federal crime while on bond—made it impossible for Missouri officials to execute the judgment of the state Supreme Court, his Missouri sentence was tolled until he was returned to Missouri by federal officials. Petitioner's confinement in a federal prison was legal because his conviction was legal and because federal officials could properly retain jurisdiction over him after his trial. Since petitioner's federal confinement was not mistaken or illegal, see *Harkins,* supra, Missouri officials had no constitutional duty to give credit for the time spent by petitioner in federal custody, *Harkins v. Wyrick,* supra, and their refusal to do so under the Missouri statutes was solely a matter of state law. See *Makal v. State of Arizona,* 544 F.2d 1030, 1036 (9th Cir. 1976).

Petitioner argues that a different result is compelled by the fact that the federal trial judge issued an order under Rule 35, Fed.R.Crim.P., recommending that petitioner's federal sentence run concurrently with his state sentence. The federal judge made this recommendation in late 1976, long after petitioner had begun to serve his federal sentence and several months after he had been returned to Missouri custody.

This argument is without merit.

As to petitioner's federal sentence, the trial judge's order was merely a recommendation without binding effect on the Attorney General of the United States, who has ultimate authority to determine whether federal sentences will be served concurrently with state sentences by his authority to

---

**3.** *Nelson* was later vacated by the United States Supreme Court for reconsideration in light of *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), which relate to jail-time credit for defendants who cannot make bail pending trial

and are therefore forced to remain in jail. The order of the Supreme Court, *Nelson v. United States,* 402 U.S. 1006, 91 S.Ct. 2193, 29 L.Ed.2d 428 (1971), thus had no effect on the discussion quoted above. The indigency question is not relevant to this case since this case involves post-conviction credit.

designate a federal prisoner's place of confinement. The federal trial judge had no authority to require concurrent sentences, *Greathouse v. United States,* 548 F.2d 225 (8th Cir. 1977), and the Attorney General no obligation to accept such a recommendation. *Hash v. Henderson,* 385 F.2d 475 (8th Cir. 1967).

■ The State of Missouri, a separate sovereignty, had no constitutional or statutory obligation under federal law to recognize the order issued in the Rule 35 proceeding. Under Rule 35, the federal court's power to modify or correct a sentence extended only to a sentence it had issued and not to a sentence legally imposed by another sovereign. By corollary, any change or recommendation made by the federal court extended only to its own sentence, for the simple reason that it had no other power in a Rule 35 proceeding. While it might have been politic for Missouri officials to recognize the effect of the Rule 35 order, this Court can find no federal constitutional or statutory provision that required Missouri to recognize a recommendation—as noted above, that was the only effect of the Rule 35 order—of a judge of a second sovereignty that a sentence legally imposed by a court in the second sovereignty be made to run concurrently with a Missouri sentence. Cf. *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Wallace,* 578 F.2d 735 (8th Cir. 1978). Since Missouri had no federally-imposed obligation to recognize the Rule 35 recommendation, its choices concerning the effect of that order were purely matters of state law not reviewable by this Court. *Harkins v. Wyrick,* supra.

The Court therefore holds that petitioner is not entitled to credit on his Missouri sentence for time spent in federal custody.

Finally, out of concern for fairness to petitioner, see *Witham v. Mabry,* 596 F.2d 293 (8th Cir. 1979), the Court finds it appropriate to touch on the merits of the four claims presented in the motion to amend.

■ The first of the four—that counsel was ineffective in failing to secure the testimony of Ernie Bacon—was presented in summary fashion in petitioner's Rule 27.26 hearing. The state judge in that case made a general finding that petitioner's trial attorneys, Granville Collins and Charles Shaw, had provided effective assistance. Rule 27.26 Tr., 138–39. This finding, made after a full evidentiary hearing and evidence by a written record, is presumptively correct. 28 U.S.C. § 2254(d); *Franklin v. Wyrick,* 529 F.2d 79 (8th Cir. 1976); *Wolfs v. Britton,* 509 F.2d 304 (8th Cir. 1974); *Boothe v. Wyrick,* 452 F.Supp. 1304 (W.D. Mo.1978).

■ To succeed on this claim, petitioner must state allegations showing that a reasonable investigation would have yielded Bacon's testimony and that the testimony would have been helpful to the defense at trial. *Reynolds v. Mabry,* 574 F.2d 978 (8th Cir. 1978); *McQueen v. Swenson,* 560 F.2d 959 (8th Cir. 1977); *Thomas v. Wyrick,* 535 F.2d 407 (8th Cir. 1976). Petitioner provides no allegations showing that his attorney failed to make a reasonable attempt to secure Bacon's testimony or that Bacon was in fact available to testify. In fact, from evidence at the Rule 27.26 hearing, it appears that Bacon, whose testimony was allegedly crucial, was not available and had refused to testify for petitioner or come to the trial. Rule 27.26 Tr., 123. Further, Bacon's testimony would have been cumulative to testimony actually offered by petitioner at trial. The state's evidence at trial showed that petitioner delivered the package of marijuana to Sharon Turner between 10:30 and 11:00 p. m. on March 5, 1967. In response petitioner offered the testimony of his roommate, Vernon Urban, who testified that he arrived at his rooms between 10:15 and 10:30 p. m. on that evening and found petitioner and Bacon at home. Tr., 295–96. Bacon's testimony would merely have been cumulative to the testimony of Urban. It will not support a

claim of ineffective assistance. *Sherrill v. Wyrick*, 524 F.2d 186 (8th Cir. 1976).[4]

■ Petitioner's second claim relates to the alleged unconstitutionality of RSMo § 195.020 in that the statute did not require the state to prove that petitioner knowingly dispensed marijuana. This claim is frivolous. The indictment against petitioner charged him with "unlawfully and feloniously" dispensing marijuana, tr. at 1, and the trial court instructed the jury that petitioner could be convicted only if he had "unlawfully and feloniously" dispensed the drug. Tr., 305. As respondent properly notes, these words have been construed by the Missouri Courts to mean intentionally and knowingly. *State v. Williams*, 546 S.W.2d 533 (Mo.App.1977). Petitioner has no cause to complain.

■ The third claim turns on RSMo § 195.080 according to the petition. As respondent properly notes, however, petitioner really addressed the constitutionality of § 195.180, which provides:

In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this law, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this law, and the burden of proof of any such exception, excuse, proviso or exemption shall be on the defendant.

As noted by the state court in petitioner's Rule 27.26 proceeding, Missouri courts have interpreted this section as relating to affirmative defenses, which must be proved by defendant and not negated by the state. Rule 27.26 Tr., 136, citing *State v. Virdue*, 371 S.W. 196 (Mo.1963), and *State v. McCauley*, 522 S.W.2d 152 (Mo.App.1975). A requirement that the defendant prove an affirmative defense violates no federal constitutional privilege. *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319 (1977).

This claim—assuming that is even applicable given the defense raised by petitioner at trial—is also frivolous.

■ Finally, petitioner argues that there was insufficient evidence to support the jury's verdict that petitioner had knowingly dispensed marijuana. In assessing this claim, the guilty verdict reached at trial must stand unless the record is so devoid of evidentiary support that a due process issue is raised. *Wilson v. Parratt*, 540 F.2d 415 (8th Cir. 1976); *Cuhna v. Brewer*, 511 F.2d 894 (8th Cir. 1974); *Boothe v. Wyrick*, 452 F.Supp. 1304 (W.D. Mo.1978). The Court's review of the transcript in this case, as summarized by the opinion in petitioner's direct appeal, *State v. Rollins*, 449 S.W.2d 585 (Mo.1970), and the briefs on appeal in that case, shows that the record was not so devoid of support for the jury's verdict on this issue as to raise a due process issue. This claim does not entitle petitioner to relief.

In short, each of the four claims presented in the motion to amend is baseless. More detailed examination of their merits is not warranted.

Summarizing, the Court has found that the four claims presented in the motion to amend constitute an abuse of the writ of habeas corpus; they are also without substantive merit. Petitioner's jail-time credit claim, though not an abuse of the writ, is also baseless. All of the claims in this petition may be denied without further proceedings. *Boothe v. Wyrick*, supra; *Randall v. Wyrick*, 441 F.Supp. 312 (W.D.Mo. 1977).

For the reasons stated above, it is hereby

ORDERED that this petition for writ of habeas corpus is denied.

---

4. Petitioner also makes other cursory allegations on the ineffective assistance issue, but they are unsupported by concrete factual allegations. See *Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); *Boothe v. Wyrick*, supra. In view of petitioner's lack of specificity and the comprehensiveness of the state court's review of this issue during the Rule 27.26 hearing, the Court finds no reasons to search the record at random for claims that might support a generalized claim of ineffective assistance.