911 F.2d 734
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America, Plaintiff Appellee,
v.
Mattie Louise AVERY, Defendant-Appellant.
 No. 90-5216.
 United States Court of Appeals, Sixth Circuit.
 Aug. 15, 1990.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Mattie Louise Avery appeals the district court's order denying her motion for sentence credit. For the following reasons, we affirm.
 
 I.
 
 2
 On May 19, 1988, defendant was charged on a federal indictment with conspiracy to distribute dilaudid, conspiracy to unlawfully possess food stamps, distribution of dilaudid, and unlawful possession of food stamps. The offenses for which defendant was charged occurred between December 1, 1987 through February 29, 1988. At the time of the federal plea and sentence, defendant was in the custody of the state of Tennessee pending disposition of a probation violation in state case 88-W-238 and pending disposition of a charge for an unrelated state offense committed October 21, 1988 (case no. 89-W-4). The district court therefore issued an order to produce the prisoner ad prosequendum so that the U.S. Marshal could obtain temporary custody of defendant from the Sheriff of Davidson County, Tennessee, and produce her before the district court on November 29, 1988.
 
 
 3
 On November 29, 1988, defendant pled guilty to the conspiracy counts of the federal indictment and then pursuant to the ad prosequendum order was returned to the custody of the Davidson County Sheriff. On January 25th, 1989, defendant was still in state custody and the federal district court issued a second habeas corpus ad prosequendum order to produce defendant before the district court for sentencing in the federal case on January 26, 1989. On January 26, 1989, the defendant was sentenced to 11 months and 29 days on each conspiracy count of the federal indictment with the sentences to be served concurrently. After the sentencing hearing, defendant was returned to state custody at the Davidson County Sheriff's Department pursuant to the habeas corpus ad prosequendum order.
 
 
 4
 On February 2, 1989, a federal judgment and commitment was entered, and on February 6, 1989, a writ of detainer was placed against the defendant with the Davidson County Sheriff's Department, requesting that defendant be released to federal custody upon the completion of her state confinement.
 
 
 5
 On February 7, 1989, an order was entered in Tennessee state court which resolved the probation violation in case 88-W-238 by holding the state probation in abeyance until defendant was released from federal custody, at which time she would again be on state probation. The state charge in case No. 89-W-4 for the offense occurring on October 21, 1988 was resolved in a plea agreement entered in state court on March 29, 1989. The plea agreement stated that the sentence for the state charge in case No. 89-W-4 was to be two years--30%--to run concurrently with the federal sentence. However, the state sentencing order merely stated that her term of imprisonment for the state charge in case No. 89-W-4 was for two years without mentioning that her state sentence was to run concurrently with her federal sentence.
 
 
 6
 On April 13, 1989, the United States Marshal's Office requested designation of a facility for defendant to serve her period of confinement for the federal sentence. According to the testimony of Lex Lancaster, the Chief Deputy Marshal of the U.S. Marshal's Office, he believed that the Marshal's Office had been notified that defendant was to be released to federal custody, which was the reason for requesting the designation of a federal facility. However, he stated that he was relying on memory and was not certain why the request for designation of facility had been made. Defendant was not released by the state into federal custody at this time.
 
 
 7
 On August 10, 1989, Judge Johns, the presiding Tennessee judge in state case 89-W-4, issued an order directing the Sheriff of Davidson County to release defendant to the federal detainer. The order stated, "Mattie Louise Avery was sentenced to a two year period of confinement to be served concurrently ... with the Federal sentence ...." This was the first official order stating that her state sentence was to be concurrent with her federal sentence. The order also clearly stated, "[i]f any additional service is required upon the state sentence imposed in this case the place of confinement is designated as the United States Bureau of Prisons' designated facility." Mr. Paul Capps, the Curator of Records in charge of the Sentence Computation Division of the Davidson County Sheriff's Department acknowledged that he received this order, but he did not release defendant to federal custody as directed.
 
 
 8
 The normal procedure upon the receipt of such an order is for the Sheriff's Department to make a verbal communication to the U.S. Marshal's Office to advise them that an inmate is ready to be released to the federal detainer. The Marshal's Office then advises the Sheriff's Department to transfer the prisoner over to the federal board bill. An electronic transfer is made through the teletype machine connecting with the Sheriff's Department or the U.S. Marshal hand delivers remand receipts providing documentation of the transfer to federal custody.
 
 
 9
 In the present case, this procedure was not followed. Instead of executing the state court's order to release defendant to the federal detainer, Paul Capps of the Davidson County Sheriff's Department without any authority determined that because Judge Johns' August 10, 1989 order did not specify that defendant's state sentence in case 88-W-4 had been served, defendant should not be released. He stated that he consulted the United States Marshal's Office about this decision. He acknowledged, however, that he failed to consult with any state superior about his decision.
 
 
 10
 Lex Lancaster, the Chief Deputy U.S. Marshal, testified that he had told the Sheriff's Department that it was his understanding that the federal judgment and commitment was to follow the state sentence, but that the Sheriff's Department should check with the state court to see if that were legally correct.[1] Mr. Lancaster also testified that he advised the Sheriff's Department that if the state wished to release defendant, the U.S. Marshal's Office would take custody of her at any time. However, the Sheriff's Department did nothing.
 
 
 11
 On August 28, 1989, defendant wrote a letter to the federal district court stating her plight. The federal judge made inquiry of the U.S. Marshal's Office on defendant's status. A note in the file of the U.S. Marshal's Office dated August 31, 1989, concerning a telephone conversation with the judge, indicated that he was advised that defendant was in state custody as she had been at the time of federal sentencing and that it was their understanding that the federal sentence imposed was to run consecutively to the state sentence. The district judge therefore issued an order on August 31, 1989, stating that defendant would be taken into federal custody upon the detainer "to serve the federal sentence at the completion of her state sentence." The order stated that the sentence imposed in the federal case "was to run consecutively to the state sentence."
 
 
 12
 On September 5, 1989, defendant filed a motion for reconsideration concerning the district court's August 31st order on the grounds that defendant had not been serving a state sentence at the time the federal sentence was imposed,[2] the state sentence imposed on March 29, 1989 was to be served concurrently with the federal sentence, and the August 10, 1989 order of the state court judge had ordered the release of defendant to the federal detainer. The district court denied the motion to reconsider without a hearing.
 
 
 13
 On September 7, 1989, a representative of the U.S. Marshal's Office made inquiry with Paul Capps of the Davidson County Sheriff's Department about defendant's status and was informed that she was still in state custody and not ready to be released. On November 9, 1989, a representative of the U.S. Marshal's Office again checked with Mr. Capps and was told that the Sheriff's Department had not received documentation from the state court authorizing them to release the defendant from state custody. On December 20, 1989, defendant was released by the Sheriff's Department to the custody of the United States Marshal.
 
 
 14
 On December 18, 1989, a motion for sentence credit was filed on behalf of defendant asserting that through no fault of her own, she had "either not been made available to or not been accepted by the federal authorities for service of her sentence in this case as intended and ordered by the state court."
 
 
 15
 A hearing was held on the motion on January 19, 1990 before the district court judge. At the hearing, the district court judge determined that the August 10, 1989 order of Judge Johns, ordering defendant to be released to the federal detainer, had not been executed by the state. If defendant had a complaint, it was not with the federal court but with the state court and should have been corrected in state court by a motion to show cause why defendant had not been released. The state court order, which in plain language directed the sheriff to turn defendant over to federal authorities, simply was not obeyed. The district court determined that because defendant was in state custody, a federal detainer had been placed with the Davidson County Sheriff's Office on February 6, 1989. Defendant had remained in state custody until being released to the United States Marshal Service upon the detainer on December 20, 1989. Since defendant was not in federal custody until December 20, 1989, the district court had no authority to credit her federal sentence with the time spent in state custody serving the sentence imposed by the state court. The district court therefore entered an order denying the motion for sentence credit. Defendant timely filed this appeal.
 
 II.
 
 16
 Defendant claims that the district court had jurisdiction to grant sentence credit pursuant to 28 U.S.C. Sec. 2255, which states in pertinent part:
 
 
 17
 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
 
 
 18
 The government argues that since the defendant is attacking the execution of the sentence rather than alleging that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose the sentence, or that it was in excess of the maximum authorized by law, or otherwise subject to collateral attack, section 2255 does not apply.
 
 
 19
 We agree with the government. 28 U.S.C., Sec. 2255 may be used to challenge the sentence imposed, but not the execution of the sentence. United States v. Hutchings, 835 F.2d 185, 186 (8th Cir.1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir.1980). Section 2255 thus does not give this court jurisdiction to hear this appeal.
 
 
 20
 However, we find that the district court had authority to provide sentence relief under 18 U.S.C. Sec. 3585, which governs crimes occurring after November 1, 1987. Section 3585 provides:
 
 
 21
 (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
 
 
 22
 (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
 
 
 23
 (1) as a result of the offense for which the sentence was imposed; or
 
 
 24
 (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
 
 
 25
 that has not been credited against another sentence.
 
 III.
 
 26
 This court must next determine whether the district court erred in determining that defendant was not entitled to credit on her federal sentence for the time spent in state custody.
 
 
 27
 Defendant first argues that under section 3585 her federal sentence began from the time she had been "awaiting transportation" to federal custody on March 29, 1989, when the plea in state case 89-W-4 was accepted. The plea agreement stated that the state sentence was to run concurrently with the federal sentence. Defendant alternatively argues that she was "awaiting transportation" from August 10, 1989, when the state court ordered her to be released to the federal detainer.
 
 
 28
 We find that the legislative history of section 3585 indicates that defendant has misconstrued the meaning of the term "awaiting transportation."
 
 
 29
 SECTION 3585. CALCULATION OF A TERM OF IMPRISONMENT
 
 2. Present Federal law
 
 30
 Current Federal law on these subjects is contained in 18 U.S.C. 3568. That section provides that a term of imprisonment commences on the date that the offender is received at an institution for the service of his sentence or on the date he is taken into custody awaiting transportation to the place he is to serve his sentence. It further provides that the offender will receive credit for any time spent in custody in connection with the offense or acts for which the sentence was imposed.
 
 3. Provisions of the bill, as reported
 
 31
 Subsection (a) of proposed 18 U.S.C. 3585 provides that the sentence commences on the date that the defendant is received in custody awaiting transportation to the facility in which he is to serve his sentence, or arrives voluntarily at such facility. Current law language differs from subsection (a) by stating that a sentence begins from the date of receipt at a facility or, if he is committed to one facility to await transportation to another facility, on the date of receipt at the first facility. The Committee does not intend a different result by not specifically requiring that the defendant be committed to the facility from which he will be transported.
 
 
 32
 S.Rep. No. 225, 98th Cong.2d Sess. 128-129, reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3311-12 (footnotes omitted) (emphasis added). Thus, in the present case, defendant was not "awaiting transportation" within the meaning of section 3585 until she was received into federal custody.
 
 
 33
 We find that defendant was not received into federal custody until December 20, 1989. Because defendant was first arrested on state charges and was in state custody at the time of the federal proceedings, the state had prior jurisdiction over defendant. It is well-settled as between a state and the United States that the governmental entity which first retains physical possession of a defendant may proceed in its sovereign capacity with a trial, sentencing and imprisonment before the second sovereign gains jurisdiction. United States v. Warren, 610 F.2d 680, 684-85 (9th Cir.1980); United States v. Croft, 450 F.2d 1094, 1099 (6th Cir.1971); Mitchell v. Boen, 194 F.2d 405, 407 (10th Cir.1952); Vanover v. Cox, 136 F.2d 442, 443 (8th Cir.), cert. denied, 320 U.S. 779 (1943).
 
 
 34
 If, as in the present case, a defendant is first in state custody and then is turned over to federal officials for federal prosecution under a writ of habeas corpus ad prosequendum, the state government's loss of jurisdiction is only temporary. Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir.1980); In re Liberatore, 574 F.2d 78, 89 (2nd Cir.1978). The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately. Bullock v. State of Mississippi, 404 F.2d 75, 76 (5th Cir.1968); Zerbst v. McPike, 97 F.2d 253, 254 (5th Cir.1938).
 
 
 35
 In the present case, the defendant was "loaned" temporarily by the state, who first had jurisdiction over the defendant, to the federal government for criminal proceedings--first for the entry of the plea bargain on November 29, 1988, and then for sentencing on January 26, 1989. Upon the completion of each federal proceeding, defendant was returned to the custody of the state. The intention of the federal government to return defendant to state custody before the commencement of the federal sentence was made evident by the issuance of a federal detainer to the Davidson County Sheriff's Department where defendant was in state custody, instructing the department to release defendant to the federal detainer upon the completion of her state confinement. In the present case, without consent of state authorities, the Federal Marshal possessed no means of enforcing the federal sentence. Thus, we find that the district court was correct in determining that defendant's federal sentence did not commence running until December 20, 1989, when defendant was released by the state and the United States Marshal was able to assume custody over her. United States v. Kanton, 362 F.2d 178, 179 (7th Cir.1966), cert. denied, 386 U.S. 986 (1967); Holleman v. United States, 612 F.Supp. 384, 386 (N.D.Ind.1985).
 
 
 36
 Defendant next argues that she should be given credit on her federal sentence for the time spent in state custody because the commencement of her federal sentence was delayed due to the fault of the United States Marshal and district judge. Although we agree with defendant that her continued confinement in state prison was against the intention of the state sentencing judge, who stated in her August 10, 1989 order that defendant's state sentence was to run concurrently with her federal sentence, the federal court does not have the authority to correct this error. Courts have uniformly held that a defendant's federal sentence is in no way legally affected if a state chooses to incarcerate defendant before the federal sentence has commenced to run. Pinaud v. James, 851 F.2d 27, 31 (2nd Cir.1988) ("even state prisoners whose state sentences have been vacated have been held not entitled to credit on unrelated federal sentences"); Vaughn v. United States, 548 F.2d 631, 632-33 (6th Cir.1977) (if state imprisonment results from an unrelated state charge, credit for time served in state custody may not be granted on federal sentence); Opela v. United States, 415 F.2d 231, 232 (5th Cir.1969) (although state sentencing judge intended state sentence to be concurrent to federal sentence, state of Texas' failure to carry out state judge's intention does not legally affect federal sentence which commenced from the date defendant was received in federal custody).
 
 
 37
 Under 18 U.S.C. Sec. 3585(b), credit is allowed for time spent in custody pursuant to an unrelated state offense only if the time has not been credited to another sentence. The legislative history of section 3585(b) states:
 
 
 38
 Subsection (b) provides that the defendant will receive credit towards the sentence of imprisonment for any time he has spent in official custody prior to the date the sentence was imposed where the custody was a result of the same offense for which the sentence was imposed or was a result of a separate charge for which he was arrested after the commission of the current offense. No credit would be given if such time had already been credited toward the service of another sentence.
 
 
 39
 S.Rep. No. 225, supra, at 3312. In the present case, the time spent in state custody in case 89-W-4 was credited to defendant's state sentence.
 
 
 40
 It is true that if the federal government first has custody of defendant or if the state has attempted to release a defendant to a federal detainer and the delay in service of the federal sentence is the fault of the United States Marshal, sentence credit has been allowed. Kiendra v. Hadden, 763 F.2d 69, 73 (2nd Cir.1985) (federal sentence credited with time from date of defendant's release from state custody where United States Marshal failed to exercise federal detainer and took no action against defendant in spite of request by state on three occasions that federal government take defendant into custody); United States v. Croft, 450 F.2d at 1098 (failure of United States Marshal to execute a federal commitment order issued upon federal sentencing for an offense over which federal government had prior jurisdiction does not postpone beginning of federal sentence).[3]
 
 
 41
 Similar circumstances are not present in the instant case. In contrast to Croft (failure to obey mittimus order) and Kiendra (failure to exercise federal detainer), the United States Marshal in the instant case did not violate a federal order concerning defendant's custody which delayed the commencement of defendant's federal sentence. Instead a state employee disobeyed a state order. Although the U.S. Marshal's Office may have given the state employee confusing advice because they were unfamiliar with the terms of the state sentence imposed in state case 89-W-4,[4] the Marshal's Office informed the Sheriff's Department that it was incumbent upon the Department to comply with state law and consult the appropriate state authorities about the defendant's release. The Marshal's Office indicated that they were ready to receive defendant at any time upon her release from the state. Twice the Marshal's Office made inquiries to see if defendant was ready to be released and each time they were erroneously informed by the Sheriff's Department that the requisite state papers had not been received. The Sheriff's Department received a state court order directing that defendant be released to the federal detainer on August 10, 1989, because her state sentence was to run concurrently with her federal sentence. The reason defendant was not released to the federal detainer was because a state official disobeyed this order. An employee of the Sheriff's Department without any authority required the defendant to continue to serve her state sentence in state court in spite of the plain language of the August 10th, 1989 state court order. The district court had no authority to remedy this state error. Section 3585 allows credit for time spent in custody on an unrelated offense that is not credited to another sentence, but no credit is allowed for time spent in state custody due to state error. Because defendant's state sentence was credited with the time spent in state custody, the federal district court has no authority to credit her federal sentence with this time.
 
 
 42
 For these reasons, the decision of the district court denying defendant's motion for sentence credit is hereby affirmed.
 
 
 43
 KENNEDY, Circuit Judge, concurring.
 
 
 44
 I concur in that portion of the majority's opinion that holds that the district court did not have jurisdiction under 28 U.S.C. Sec. 2255, however, I am unable to agree that 18 U.S.C. Sec. 3585 confers jurisdiction on the district courts to calculate sentence credits in the first instance.
 
 
 45
 Analyzed in light of its history, I believe it is clear that section 3585 is not jurisdictional and that the Bureau of Prisons has been vested with the authority to determine whether a prisoner is entitled to sentence credit in the first instance.
 
 
 46
 Section 3585 replaced a former code provision, 18 U.S.C. Sec. 3568, that served an identical purpose. Section 3568 made clear in its express language that sentencing credit was to be given and the time served was to be calculated by the Attorney General at least in the first instance. It provided, in relevant part, that "[t]he Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed."
 
 
 47
 Courts interpreting section 3568 held that a prisoner must first seek administrative relief before bringing suit in the courts. See, e.g., United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir.1989); United States v. Berry, 814 F.2d 1406, 1410-11 (9th Cir.1987); United States v. Norman, 767 F.2d 455, 457 (8th Cir.1985); United States v. Giddings, 740 F.2d 770, 771-72 (9th Cir.1984); United States v. Baez, 732 F.2d 780, 781-83 (10th Cir.1984); Chua Han Mow v. United States, 730 F.2d 1308, 1313-14 (9th Cir.1984), cert. denied, 470 U.S. 1031 (1985); United States v. Mathis, 689 F.2d 1364, 1365-66 (11th Cir.1982); United States v. Clayton, 588 F.2d 1288, 1292 (9th Cir.1979); Soyka v. Alldredge, 481 F.2d 303, 304-06 (3d Cir.1973); United States v. Lewis, 447 F.2d 1262, 1265 (D.C.Cir.1971); United States v. Morgan, 425 F.2d 1388, 1389-90 (5th Cir.1970); United States v. Carmen, 479 F.Supp. 1, 2 (E.D.Tenn.), aff'd without opinion, 601 F.2d 587 (6th Cir.1979).
 
 
 48
 Such an exhaustion requirement makes sense independently of the express commitment of the decision to the Attorney General:
 
 
 49
 "The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings."
 
 
 50
 Chua Han Mow, 730 F.2d at 1313 (quoting Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983)). Moreover, since the Bureau of Prisons also calculates sentence credits and permits administrative review of its calculations, 28 C.F.R. Part 542, allowing judicial review prior to exhaustion of remedies could result in the courts and the Bureau of Prisons holding simultaneous administrative and judicial proceedings and reaching inconsistent results.
 
 
 51
 Further, those cases that held that suit could be brought in the federal courts following a prisoner's exhaustion of administrative remedies, did not base jurisdiction to do so on section 3568 itself. Rather, most courts that reached the issue determined that jurisdiction would be by a 28 U.S.C. Sec. 2241 writ of habeas corpus. See, e.g., Giddings, 740 F.2d at 772; United States v. Short, 623 F.Supp. 62, 63 (D.Nev.1985); see also, Brown v. United States, 610 F.2d 672, 677 (9th Cir.1980) (parole decisions subject to review under section 2241, not section 2255); Tedder v. United States Board of Parole, 527 F.2d 593, 594 n. 1 (9th Cir.1975) (same).
 
 
 52
 Unless it can be said that by modifying the statute Congress intended to expand the jurisdiction of the federal courts and to no longer require the exhaustion of administrative remedies as is required in virtually all other areas of the law, there does not appear to be a basis for finding jurisdiction of the case under section 3585.
 
 
 53
 A brief examination of the legislative history reveals that Congress' primary concern in modifying the statute was to correct certain inequities that had arisen under the old statute. No mention is made of expanding court jurisdiction or of deleting the judicially created requirement that a defendant exhaust administrative remedies. If anything, the legislative history presents the implicit assumption that the primary responsibility for calculating and making other arrangements concerning a sentence will continue to be vested in the executive branch:
 
 
 54
 Subsection (a) of proposed 18 U.S.C. 3585 provides that the sentence commences on the date that the defendant is received in custody awaiting transportation to the facility in which he is to serve his sentence, or arrives voluntarily at such facility. Current law language differs from subsection (a) by stating that a sentence begins from the date of receipt at a facility or, if he is committed to one facility to await transportation to another facility, on the date of receipt at the first facility. The Committee does not intend a different result by not specifically requiring that the defendant be committed to the facility from which he will be transported.
 
 
 55
 The Committee also does not intend that this provision be read to bar concurrent Federal and State sentences for a defendant who is serving a State sentence at the time he receives a Federal sentence. It should be possible for the Bureau of Prisons to use its authority to contract with State facilities to make equitable arrangements for a defendant to continue to reside in the State facility while serving part of his Federal sentence.
 
 
 56
 S.Rep. No. 225, 98th Cong.2d Sess. 129, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3312 (footnotes omitted); see also 18 U.S.C. Secs. 3621 (federal prisoners to be committed to the custody of Bureau of Prisons) and 4042 (Bureau of Prisons to have charge of the management and regulation of all federal prisons).
 
 
 
 [1]
 At the time the federal judgment was entered on February 2, 1989, this was correct. Defendant's federal sentence was to be consecutive to her state confinement in cases 88-W-238 and case 89-W-4 as the issuance of the federal detainer indicates
 
 
 [2]
 This is not true as defendant was in state custody concerning a probation violation in case 88-W-238 at the time the federal sentence was imposed
 
 
 [3]
 The federal commitment or mittimus order directed that defendant be delivered to federal prison after state proceedings. Instead the U.S. Marshal allowed defendant to remain in state custody
 
 
 [4]
 The district court on August 31, 1989, issued an order stating that the federal sentence was to be consecutive to the state sentence. It is understandable how the U.S. Marshal's Office and district court became confused as there were two state sentences--one concerning state case 88-W-238 entered before the federal sentence and one concerning case no. 89-W-4 entered after the federal sentence. However, the district court's order was not binding on the state. Cody v. Missouri Bd. of Probation and Parole, 468 F.Supp. 431, 439 (W.D.Mo.1979)